No. 45,209

CHARLES L. LEADERBRAND, *Appellant,* v. THE CENTRAL STATE BANK OF WICHITA, *Appellee.*

(450 P. 2d 1)

*Richard V. Foote,* of Wichita, argued the cause, and *John R. Blair, Don Matlack, Ronald H. Rogg, Donald E. Lambdin* and *Gerald W. Scott,* also of Wichita, were with him on the brief for the appellant.

*James R. Hanson,* of Wichita, argued the cause, and *John E. Boyer, Paul J. Donaldson, Kenneth P. Stewart* and *Robert L. Smith,* also of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action by one who claims to be the holder of a check against the payor bank for retaining said check, after receipt, beyond its "midnight deadline" before giving notice of dishonor as required by K. S. A. 84-4-301 and 84-4-302 of the Uniform Commercial Code. The trial court sustained the defendant's motion for summary judgment on the ground the plaintiff was not a proper party to bring the action, and appeal has been duly perfected.

The Electrified Water Company of Shreveport, Louisiana, was owned and operated by Ralph L. Leaderbrand, the brother of the plaintiff herein, Charles L. Leaderbrand (appellant). The plaintiff was a part-time salesman for the Electrified Water Company selling, among other things, White Shield Wonder Cleaner.

Early in March, 1966, the exact date being uncertain, the plaintiff took an order from G. Elliott Lyon to Electrified Water Company for 100 cases of White Shield Wonder Cleaner. At or about the same time Lyon gave to the plaintiff, in payment for the White Shield Wonder Cleaner, his check dated March 5, 1966, drawn on the Central State Bank of Wichita, Kansas, payable to the Electri-

fied Water Company in the amount of $1,699.50. On or about the 15th day of March, 1966, the plaintiff presented this check in person at the Central State Bank in Wichita, Kansas, to Mr. Burton Black, or another officer of the bank, and was advised orally that the account of G. Elliott Lyon did not contain sufficient funds to honor the check. Approximately one week later the plaintiff returned to the Central State Bank in Wichita and was orally informed a second time that the account of G. Elliott Lyon did not contain sufficient funds to honor the check.

Thereafter, on or about the 21st day of March, 1966, the plaintiff deposited the check in his own account at the First State Bank in Salina, Kansas, and was advised by the Salina bank that he would not be given immediate credit for this check. The First State Bank of Salina did not send the check through regular banking channels for collection, but sent the check directly to the Central State Bank, "mailed for collection," the check arriving on March 21 or 22, 1966. At no time did the account of G. Elliott Lyon at the Central State Bank in Wichita have sufficient funds with which to pay the check in question, and on April 5, 1966, payment having been stopped by Lyon, the Central State Bank of Wichita returned the check to the First State Bank of Salina unpaid. The White Shield Wonder Cleaner, for which the check to the Electrified Water Company was given in payment, was returned by Lyon to the Electrified Water Company in Shreveport, Louisiana, and accepted by it.

Thereupon this action was brought by the plaintiff against the Central State Bank of Wichita to recover the amount of the check made payable to the Electrified Water Company in reliance upon K. S. A. 84-4-301 and 84-4-302. After discovery proceedings, motions for summary judgment were filed by the respective parties based upon the pleadings, depositions, answers to interrogatories and admissions on file. Appeal has been duly perfected by the plaintiff from the ruling of the trial court sustaining the motion for summary judgment in favor of the defendant.

The appellant states the points in the record on appeal as follows:

"1. The court erroneously ruled as a matter of law on defendant's Motion for Summary Judgment, that the Plaintiff was not a proper party to bring this action, when plaintiff in his deposition claims to have authority to endorse the check in question both from Electrified Water Company the named payee and G. Elliott Lyons the drawer of the check.

"2. The court erred in failing to rule as a matter of law that the Plaintiff was a proper party to bring the above action, in that the defendant offered no evidence to the contrary, as disclosed by the Record on Appeal."

The appellant relies upon additional facts which are taken from his deposition. He testified that although the check was made payable to the Electrified Water Company, the check in question was given to him by Mr. Lyon with the understanding that the appellant would be able to cash the check. His deposition testimony further discloses that when the 100 cases of cleaner were shipped to Mr. Lyon, the appellant issued his personal check for $1,500 to the Electrified Water Company of Shreveport, Louisiana, in payment for the 100 cases of White Shield Wonder Cleaner.

The appellant relies upon K. S. A. 84-3-203 for the proposition that when an instrument is made payable to a person under a name other than his own, he may indorse the instrument in that name or his own or both. Upon this premise it is argued the check, made payable to the Electrified Water Company, was given by the maker (G. Elliott Lyon) to the appellant with authority to cash, negotiate and present the check for payment.

The appellant further argues, if the trial court was correct in holding the check was owned by and the property of the appellant's brother, who owned and operated the Electrified Water Company of Shreveport, Louisiana, the trial court erred in holding as a matter of law that the appellant did not have authority to present the check for payment and the right to bring this action in his own name.

The deposition of the appellant discloses that he had verbal authority from his brother to indorse the check made payable to the Electrified Water Company. (The Uniform Commercial Code permits a signature to be made by an agent [K. S. A. 84-3-403], and the law relative to principal and agent supplements its provisions [K. S. A. 84-1-103].)

The appellant contends the check in question was issued to him and that he had possession of it. (Citing, K. S. A. 84-1-201 [20].) As such the appellant argues he is a holder of the instrument and entitled to the rights of a holder. (K. S. A. 84-3-301.) Whereupon the appellant concludes he has the right to bring this action to enforce payment of the check, whether or not he is the owner of it, in his own name.

The appellee, however, contends our Code of Civil Procedure requires that all actions be brought in the name of the real party in interest, citing K. S. A. 1968 Supp. 60-217 (a), which has been held to effect no change in the former statute, G. S. 1949, 60-401. (*Ellsaesser v. Mid-Continent Casualty Co.*, 195 Kan. 117, 403 P. 2d

185.) The appellee contends the appellant is trying to maintain an action in his own name to collect proceeds which belong to his principal, and that the agent's right to a commission on the sale is not sufficient to enable him to maintain the action, citing *Sievert v. Wood*, 133 Kan. 540, 300 Pac. 1090.

It should be noted this is not an action upon a check, but is an action to hold the payor bank accountable for the amount of a check under K. S. A. 84-4-302. The portion of this statute pertinent herein reads:

"In the absence of a valid defense such as breach of a presentment warranty (subsection (1) of section 84-4-207), settlement effected or the like, if an item is presented on and received by a *payor bank* the bank *is accountable* for the amount of

"(*a*) a *demand item* other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item *beyond midnight of the banking day of receipt* without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; . . ." (Emphasis added.)

In view of the posture of this case on appeal we shall assume, without deciding, that the appellant was a proper party to bring this action. There is an obvious reason under the Uniform Commercial Code why the decision of the trial court sustaining the appellee's motion for summary judgment was correct. If the judgment of the trial court was correct for any reason, it should not be disturbed on appeal. (*Henks v. Panning*, 175 Kan. 424, 264 P. 2d 483; and *George v. Ayesh*, 179 Kan. 324, 295 P. 2d 660.)

Under 84-4-302, *supra*, the payor bank is required to handle a demand item promptly, and upon failure to do so is made accountable for the amount of the item to the person presenting it.

Under the previous section of the Uniform Commercial Code (K. S. A. 84-4-301) a demand item received by the payor bank for credit on its books may be returned or notice of dishonor sent if it acts before its midnight deadline. Subparagraph (3) of this section reads:

"(3) *Unless previous notice of dishonor has been sent* an item is dishonored at the time when for purposes of dishonor it is returned or notice sent in accordance with this section." (Emphasis added.)

"Midnight deadline" is defined in K. S. A. 84-4-104 (1) (*h*) as follows:

" 'Midnight deadline' with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later;"

Under the provisions of K. S. A. 84-3-508 (3) notice of dishonor may be given in any reasonable manner. It may be *oral* or written and in any terms which identify the instrument and state that it has been dishonored.

Under the admitted facts and circumstances of the instant case, the check in question came to the Central State Bank of Wichita, the payor bank, for collection, after having been twice orally dishonored by the payor when the appellant presented the check over the counter at such bank for payment.

K. S. A. 84-3-511 (4) reads:

"Where a draft has been dishonored by nonacceptance a later presentment for payment and any notice of dishonor and protest for nonpayment are excused unless in the meantime the instrument has been accepted."

A writing which complies with the requirements of K. S. A. 84-3-104 is a "draft" if it is an order, and a "check" if it is a draft drawn on a bank and payable on demand.

It thus appears from the foregoing sections of the Uniform Commercial Code that the failure of the payor bank to give notice of dishonor before its "midnight deadline," asserted by the appellant to make the payor bank accountable for the amount of the check, was excused.

A careful analysis of these sections of the Uniform Commercial Code will confirm this conclusion.

Section 84-4-302, *supra,* provides the sanction to make 84-4-301, *supra,* effective. The improper retention of a *demand item* other than a documentary draft results in accountability, whether the item was properly payable or not, unless the bank has a valid defense. Relatively speaking, this is a new section in that it was not a part of the Negotiable Instruments Law. Under sections 136 and 137 of the Negotiable Instruments Law the retention of an instrument for more than twenty-four hours by the drawee bank rendered the drawee liable as an acceptor. (*Mendell v. Union State Bank,* 142 Kan. 84, 45 P. 2d 869 [1935].) In 1949 the Kansas legislature reversed the rule, making the appropriate sections of the Kansas enactment, K. S. A. 52-1105 and 52-1106, inapplicable to checks. A check, being a demand item, is covered by 84-4-302, *supra,* which renews the possibility of attaching liability to a drawee bank that does not pay or dishonor a check before its "midnight deadline." (See, KANSAS CODE COMMENT in 8 Vernon's Kansas Statutes Annotated, Uniform Commercial Code, § 84-4-302, p. 437.)

Two cases have been called to our attention under section 4-302 (K. S. A. 84-4-302) of the Uniform Commercial Code: *Rock Island Sales v. Empire Packing,* 32 Ill. 2d 269, 204 N. E. 2d 721, 18 A. L. R. 3d 1368 (1965); and *Farmers Coop. Livestock Mkt. v. Second Nat. Bank,* 427 S. W. 2d 247 (Ky. 1968).

In the *Rock Island Sales* case the plaintiff sold 61 head of cattle to the Empire Packing Company and received therefor Empire's check in the sum of $14,706.90. The check, made payable to the plaintiff, was deposited in a collecting bank and sent to the defendant payor bank. Because the drawer's balance was inadequate, the defendant bank held the check five days upon assurance that additional funds would be deposited. Contrary to such assurance the funds were not deposited and the check was returned. The plaintiff, payee of the check, brought suit against the payor bank asserting that as the payor bank it became liable for the amount of the check because it held the check without payment, return or notice of dishonor beyond the time limit fixed in section 4-302 of the Uniform Commercial Code. In a well considered opinion the Illinois Supreme Court held the payor bank accountable for the full amount of the check to the plaintiff under section 4-302 of the Uniform Commercial Code. In the opinion the court said:

"This construction does not create an irrational classification and so cause the statute to violate constitutional limitations. Defendant's contention to the contrary is based upon the proposition that section 4-302 is invalid because it imposes a liability upon a payor bank for failing to act prior to its midnight deadline that is more severe than the liability which section 4-103 (5) imposes upon a depositary bank or a collecting bank for the same default. Of course there are no such separate institutions as depositary, collecting and payor banks. All banks perform all three functions. The argument thus comes down to the proposition that the failure of a bank to meet its deadline must always carry the same consequence, regardless of the function that it is performing.

"But the legislature may legitimately have concluded that there are differences in function and in circumstance that justify different consequences. Depositary and collecting banks act primarily as conduits. The steps that they take can only indirectly affect the determination of whether or not a check is to be paid, which is the focal point in the collection process. The legislature could have concluded that the failure of such a bank to meet its deadline would most frequently be the result of negligence, and fixed liability accordingly. The role of a payor bank in the collection process, on the other hand, is crucial. It knows whether or not the drawer has funds available to pay the item. The legislature could have considered that the failure of such a bank to meet its deadline is likely to be due to factors other than negligence, and that the relationship between a payor bank and its customer may so influence its conduct as to cause a conscious disregard of its statutory duty. The

present case is illustrative. The defendant, in its position as a payor bank, deliberately aligned itself with its customer in order to protect that customer's credit and consciously disregarded the duty imposed upon it. The statutory scheme emphasizes the importance of speed in the collection process. A legislative sanction designed to prevent conscious disregard of deadlines can not be characterized as arbitary [arbitrary] or unreasonable, nor can it be said to constitute a legislative encroachment on the functions of the judiciary." (pp. 273, 274.)

The *Farmers Coop.* case also involved the sale of cattle, and was decided on facts similar to the *Rock Island Sales* case. Williams, an alleged agent of Martin, purchased cattle from the Farmers Cooperative Livestock Market, Inc., and in payment therefor Williams signed a draft in the amount of $7,687.01 payable to the order of the Farmers Coop. The instrument was drawn on the Second National Bank of London and contained the notation, " 'To (be) Charged to Acct. of Robert Martin'." (p. 248.) The check was deposited with the collection bank and forwarded to the payor bank with an accompanying letter which, among other things, stated:

" 'We enclose for collection * * * '.
" 'Wire non-payment of items $1,000.00 or over.'
" 'Please send us your draft.'
" 'Please wire if unpaid upon arrival, but hold for payment with advice to us. * * * '." (p. 248.)

Although Martin had ample funds deposited with the payor bank, it had not been authorized by Martin to charge this draft to his account. The payor bank promptly wrote Martin but received no reply. The payor bank failed to wire the collection bank as the latter had requested. Two days after the payor bank received the item the collection bank called and was told that Martin had not come into the bank to authorize payment of the instrument in question. Subsequently, the collection bank was advised by telephone that the instrument was unpaid, and it was thereafter returned with a letter of transmittal noting, " 'Unable to collect'." (p. 248.) Action was brought to recover from the payor bank under the provisions of section 4-302 of the Uniform Commercial Code. The Kentucky court held the instrument was negotiable and constituted a demand item, and the lower court was directed to enter judgment for the plaintiff for the face amount of the draft, with appropriate interest. In the opinion the court said:

"Appellee contends that it was a collecting bank because the letter of instructions accompanying the draft contained the words, 'We enclose for collection', and appellee treated the item as a collection item. The use of the

term 'collection' in the letter certainly cannot be said to have destroyed the statutory scheme governing the collection process. The letter also said, 'Please wire if unpaid upon arrival'. This draft was presented for *payment*. (Had appellee wired as instructed, it would have discharged its duty as the payor bank and subsequent action taken to settle this account would have been governed by other considerations.) With respect to how appellee treated this item, we can only say that it took the risk of loss by failure to comply with the law. (The accommodation of customers is a meritorius objective, but a payor bank also owes a clear duty of prompt notification to the bank or person presenting the demand item.)

. . . . . . . . . . . . . .

"One final question in the case concerns the meaning of the term 'accountable' in KRS 355.4-302. Appellee suggests appellant suffered no loss because of appellee's delay in dishonoring this draft. A realistic reading of this *statute compels the conclusion that failure to meet the midnight deadline* authorizes the person presenting the check to assume it has been honored and will be paid. Banking practices require the prompt settlement of such items because of the chain of credit dependent thereon.

"We think the question of accountability was properly decided in Rock Island Auction Sales v. Empire Packing Co., 32 Ill. 2d 269, 204 N. E. 2d 721 (1965). . . ." (pp. 249, 250.)

The foregoing cases indicate the underlying reasons for section 4-302 in the Uniform Commercial Code and afford a basis for further discussion of the facts in the instant case.

It is readily apparent the payor bank in the instant case did not align itself with its customer to protect that customer's credit and consciously disregard the duty imposed upon it by the statutory scheme. On the contrary, the payor bank twice dishonored the item in question when it was presented for payment. Notice of dishonor was timely imparted to the appellant in each case because he personally presented the check for payment at the payor bank without negotiating it. At no time did the appellant assume the payor bank had honored the check on the third presentment and that it would be paid, because he knew the check had been twice dishonored and was advised by the Salina bank, through whom the check was presented for collection, that he would not be given immediate credit. The admission of this fact by the appellant inferentially discloses the Salina bank had notice of the previous dishonor.

The provisions of 84-3-511 (4), heretofore quoted, are said to retain the rule of sections 116 and 151 (K. S. A. 52-828 and 52-1209) of the Negotiable Instruments Law. (KANSAS CODE COMMENT, 8 Vernon's Kansas Statutes Annotated, Uniform Commercial Code, § 84-3-511, p. 303.)

Section 116 as it previously appeared in the Kansas law (52-828, *supra*) reads:

"Where due notice of dishonor by nonacceptance has been given, notice of a subsequent dishonor by nonpayment is not necessary, unless in the meantime the instrument has been accepted."

Technically, a draft is presented for acceptance (See, K. S. A. 84-3-410) whereas a check is presented for payment. Nevertheless, a check is by definition a *draft* drawn on a bank and payable on demand. (K. S. A. 84-3-104.)

While the language of 84-3-511 (4), *supra*—"Where a draft has been dishonored by nonacceptance"—does not refer to a dishonor by nonpayment, we think reference to the dishonor of a "draft" "by nonacceptance" would, *a fortiori*, include the dishonor of a check by nonpayment. Under K. S. A. 84-3-507 (1) (*a*) an instrument is dishonored when a presentment is duly made and due acceptance or payment is refused or cannot be obtained within the prescribed time or in case of bank collections the instrument is seasonably returned by the midnight deadline.

Section 1-203 of the Uniform Commercial Code (K. S. A. 84-1-203) provides that every contract or duty within the act imposes an obligation of good faith in its performance or enforcement.

A study of the various sections of the Uniform Commercial Code adopted by Kansas as they relate to the facts in this case, and in particular sections 84-4-301 (3), 84-3-511 (4) and 84-1-203, *supra*, discloses a statutory scheme designed to impose a duty upon the payor bank, where a check is presented for payment and the drawer has insufficient funds on deposit to cover the item, to give timely notice of dishonor to the party presenting the check for payment just once. Such notice of dishonor *fixes the time at which the item is dishonored by the payor bank* as to the party presenting such item, and subsequent presentment of the item for collection, where the drawer still has insufficient funds on deposit to cover the item, does not require an additional notice of dishonor by the payor bank to such party. Under these circumstances any further notice of dishonor is excused.

The foregoing interpretation of the Uniform Commercial Code is fortified by analogy in section 3-201 (1) of the Uniform Commercial Code (K. S. A. 84-3-201 [1]), which provides:

"Transfer of an instrument vests in the transferee such rights as the transferor has therein, except that a transferee who has himself been a party to

any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a later holder in due course."

The appellant herein, once he had timely notice of dishonor upon presentment of the check for payment, was charged with knowledge that the validity of the instrument was impaired. Any rights which the appellant had, after once having been given timely notice of dishonor by the payor bank, are governed by other considerations in the Uniform Commercial Code (See, K. S. A. 84-3-507 [2]; 84-3-413 [2]; 84-3-122 [3], etc.) Under the facts and circumstances here confronting the court, the appellant is estopped to assert the penalty provisions of 84-4-302, *supra,* against the payor bank.

The sanction imposed by the provisions of section 84-4-302, *supra,* were designed to compel compliance with the statutory duties imposed upon the payor bank, but once these duties have been discharged by the payor bank the statutory scheme which emphasizes the importance of speed in the collection process, and the prompt settlement of such items because of the chain of credit dependent thereon has been fulfilled, and the reason for the sanction imposed dissipates. It was not the intention of the legislature to arbitrarily impose liability upon the payor bank under the facts and circumstances here confronting the court.

Article 4 of the Uniform Commercial Code governs checks and other negotiable instruments during bank collection and payment. It also governs the relationship between a bank and its checking account depositor. But Article 4 does not contain detailed provisions concerning negotiable instruments law, and it depends heavily upon Article 3 to supplement its provisions in this regard. Article 3 governs the rights and duties of the parties to commercial paper. In case of conflict, the rules of Article 4 control those of Article 3. (K. S. A. 84-3-103 [2] and K. S. A. 84-4-102 [1].)

As we construe the provisions of 84-4-302, 84-4-301 and 84-3-511 (4), *supra,* there is no conflict between the foregoing sections of Article 3 and Article 4 of the Uniform Commercial Code as enacted by the Kansas legislature in 1965.

In conclusion we hold the sanction imposed by the provisions of 84-4-302, *supra,* does not apply to the appellee in the instant case, and the trial court properly decided the matter by sustaining the appellee's motion for summary judgment.

The judgment of the lower court is affirmed.