Marcus **WILEY**, James Tate and James Irby, a partnership doing business as **Wiley, Tate & Irby, Plaintiffs-Appellees,**

v.

The **PEOPLES BANK AND TRUST COMPANY, Defendant-Appellant.**

No. 29784

United States Court of Appeals, Fifth Circuit.

Feb. 10, 1971.

**514**

C. R. Bolton, W. P. Mitchell, Jeremy J. Eskridge, Mitchell, Rogers & Eskridge, Tupelo, Miss., for defendant-appellant.

Pat D. Holcomb, Clarksdale, Miss., John F. Kizer, Milan, Tenn., for plaintiffs-appellees.

On Petition For Rehearing

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The hands on the clock had turned past the midnight deadline fixed by the Mississippi Uniform Commercial Code (MUCC),[1] not once, but many times before the Payor Bank returned unpaid the demand instruments sued on here. In such a circumstance, the only avenue of escape from the Code's automatic visitation of accountability upon the bank was for it to establish that the instruments were documentary drafts, which are excepted from the deadline. A trial before the lower court, sitting without a jury, resulted in a determination that the instruments were not documentary drafts and a judgment in favor of payees for the face amount of the instruments together with interest from the date of demand. We conclude that the items were documentary drafts and reverse.

Plaintiffs, Marcus Wiley, James Tate and James Irby, were partners engaged in buying and selling used cars under the trade name, Wiley, Tate & Irby. Over an extended period of time Wiley, Tate & Irby sold a number of automobiles to Billy Houston, a sole proprietor doing business as Houston Auto Sales (Houston). In connection with each purchase Houston executed and delivered to Wiley, Tate & Irby a negotiable instrument drawn on the defendant, Peoples Bank & Trust Company of Tupelo, Mississippi (Payor Bank). Upon delivery of each negotiable instrument, the respective automobiles sold were at once turned over to Houston. All transactions were consummated at Wiley, Tate & Irby's place of business in Milan, Tennessee.

In each instance Wiley, Tate & Irby deposited the instrument they received from Houston in the Milan Banking Company (Depositary Bank) and thereupon were authorized by that bank to draw against such money. The Depositary Bank transferred the instrument to Union Planters National Bank of Memphis, Tennessee (Intermediary Bank), which transferred the same to the Payor Bank.

---

1. This act is codified as Miss.Code Ann. § 41A.1–101 to 41A:10–105, inclusive. (Spec. UCC Supp.1967). "Midnight deadline" with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice, or from which the time for taking action commences to run, whichever is later. Miss.Code Ann. § 41A:4–104 (Spec. UCC Supp.1967).

Nine instruments are involved in this suit. The instruments contained a number of variations both in text and form but each of them complied with the MUCC definition of a check.[2] They were drawn on a bank, signed by the maker and contained an unconditional order to pay a sum certain on the demand of the payee. Eight of the instruments were written on envelopes. One was prepared on a regular check form.

All of the instruments except the printed check form were on envelopes which arrived at the Payor Bank sealed. One of the instruments had been presented several times and returned unpaid on each occasion. Two of the instruments were presented on two occasions and returned unpaid both times. No envelope was ever opened during the periods of time the instruments remained in the possession of the Payor Bank. When opened at the time of trial, four of the envelopes contained automobile title documents while the other four were empty. When the check form was received it had automobile title papers attached by means of a staple and the face of the instrument stated, "Title attached." All of the instruments in suit were retained by the Payor Bank from the various dates of their last (or only) presentment until September 25, 1968, when they were bundled together by the Payor Bank and returned with notice of non-payment. The interval between these dates of final presentment and the date of their last return ranged from a minimum of 12 days to a maximum of over three and a half months. All of these times were well past the midnight deadline established by the MUCC.[3]

Each of the instruments arrived at the Payor Bank with a printed collection letter form issued by the Intermediary Bank, addressed to the Payor Bank, showing that the item or items covered were drawn on Houston Auto Sales and had been endorsed by the Depositary Bank and by Wiley, Tate & Irby. The pertinent parts of this collection letter are as follows:

"WE ENCLOSE FOR COLLECTION AND CREDIT RETURNS WHEN PAID"

(Here each letter contained a description of the covered item or items showing drawee, amount and endorser.)

"*Deliver documents only on payment of drafts attached.* Return all unpaid items immediately. Do not protest items of less than $1,000.00.

PROTEST all items of $1,000.00 or over not paid except those bearing this (N.P.) (26–8) stamp, or similar authority from a preceding endorser. Wire non-payment of all items of $1,-000.00 and over." (Emphasis added.)

Liability was affixed on Payor Bank under MUCC § 4–302, which provides:

"In the absence of a valid defense such as breach of a presentment warranty (subsection (1) of Section 4–207) [§ 41A:4–207(1)], settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of

(a) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; or

(b) any other properly payable item unless within the time allowed for acceptance or payment of that item the bank either accepts or pays the item or returns it and accompanying documents." [4]

---

2. Miss.Code Ann. § 41A:3–104 (Spec. UCC Supp.1967).

3. See n. 2, *supra.*

4. Miss.Code Ann. § 41A:4–302 (Spec. UCC Supp.1967).

The trial court's reasoning was (1) that each instrument presented was a demand item drawn on the Payor Bank and (2) that none of the items constituted a documentary draft because the drawer and and the drawee were one and the same person; therefore no honor of the draft by the drawee was contemplated or necessary. We agree with (1) and disagree with (2).

■ Three MUCC definitions form the basis for our disagreement. The term "documentary draft" means any negotiable or non-negotiable draft with accompanying documents, securities or other papers to be delivered against the honor of the draft.[5] A "check" is a draft drawn on a bank and payable on demand[6] To "honor" means to pay.[7] Thus a check with accompanying documents which are to be delivered when payment is made, is a documentary draft. The center of our disagreement with the court below is found in the meaning to be ascribed to the word "honor". Honor as used in the MUCC is a term of art. The documents accompanying these items were expressly delivered against *payment*; so, because honor means pay, they remained documentary drafts exempt from the midnight deadline.

Because of the liberality with which amendments are to be allowed under the Federal Rules of Civil Procedure,[8] we do not think it would be just under the circumstances of the case merely to reverse and remand. The error of the lower court in holding these drafts were not documentary drafts prevented development of the obvious alternative issue as to whether Payor Bank complied with its duties in connection with the collection of such documentary items as prescribed by the MUCC,[9] in light of the Intermediary Bank's collection letter. Should the plaintiffs raise this alternative issue in the court below, the trial court is the appropriate forum to make such determinations in the first instance.

■ The remand in this light indicates we should deal with the Payor Bank's *arguendo* contention that MUCC § 3–511(4) insulates it from liability as to the three items which had been previously presented and returned unpaid. That section provides:

> "Where a draft has been dishonored by non-acceptance, a later presentment for payment and any notice of dishonor and protest for nonpayment are excused unless in the meantime the instrument has been accepted." [10]

Literally read, the language of this section covers only drafts which have been dishonored by *non-acceptance*.

The very nature of a check which is also a documentary draft contemplates no acceptance. The only decision to be made by the Payor Bank was the same decision it must make as to any demand item—to pay or refuse payment. However, the Kansas Supreme Court has applied § 3–511(4) to excuse compliance with the stricture of the midnight deadline in the case of dishonor by *non-payment*. The facts in Leaderbrand v. Central State Bank of Wichita, 202 Kan. 450, 450 P.2d 1 (1969), were that an ordinary check had twice been presented in person by the payee to the payor bank. Both times it was not paid because the maker lacked sufficient funds. On a third presentation through a depositary bank, the payor bank held the item several banking days before returning it unpaid. Reasoning that dishonor of a check by non-acceptance included dishonor of a check by non-payment, the court refused to hold the bank liable. We disagree with *Leaderbrand* and hold § 3–

---

5. Miss.Code Ann. § 41A:4–104(1) (f) (Spec. UCC Supp.1967).

6. Miss.Code Ann. § 41A:3–104(2) (b) (Spec. UCC Supp.1967).

7. Miss.Code Ann. § 41A:1–201(21) (Spec. UCC Supp.1967).

8. See, Fed.R.Civ.P. 15 and Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

9. Miss.Code Ann. § 41A:4–501—4–504 (Spec. UCC Supp.1967).

10. Miss.Code Ann. § 41A:3–511(4) (Spec. UCC Supp.1967).

511(4) inapplicable here. Acceptance applies only to time items. It has nothing to do with demand items.[11]

Payor Bank forcefully asserts that on last presentation of these previously presented items it knowingly and intentionally received and dealt with them as documentary drafts and made numerous efforts to get the drawer to produce sufficient funds to pay them. An interpretation of § 3–511(4) which would excuse the course of action required for the handling of documentary drafts by Part 5 of Article 4, would bring these sections into direct conflict when literally they don't conflict at all. We hold that § 3–511(4) is inapplicable to every one of the demand items in suit.

The cause is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

11. 18 Kan.L.Rev. 697, n. 48 (1970).