[Civ. No. 62496. Second Dist., Div. Three. July 27, 1982.]

HUNTMIX, INC., Plaintiff and Appellant, v.
BANK OF AMERICA, Defendant and Respondent.

**Counsel**

Gill & Baldwin and Terry H. Coyne for Plaintiff and Appellant.

Zobrist & Vienna, Burton v. McCullough, George W. Coombs, Jr., and Ullar Vitsut for Defendant and Respondent.

**Opinion**

**POTTER, J.**—Plaintiff Huntmix, Inc., appeals from the judgment for defendant Bank of America National Trust & Savings Association after defendant's demurrer to the complaint was sustained without leave to amend.

According to the allegations of the complaint, plaintiff received a check in the amount of $22,415.27 drawn on a Black Paving Company, Inc. account with defendant. The check was deposited in plaintiff's bank which presented it to defendant on July 12, 1979, "said check having previously been dishonored for lack of sufficient funds." "Said check was not paid, returned or notice of dishonor given within [the] time period specified in Commercial Code Section 4302."[1]

The trial court sustained the demurrer without leave to amend, stating: "Once the check was dishonored, there appears to be no logical reason to expect each re-presentment to be treated like the initial presentment. (Dicta in *Bank of America* v. *Security Pacific* 23 CA 3 638

---

[1]All statutory references are to the California Uniform Commercial Code unless otherwise specified.

(1978) citing *Leaderbrand* v. *Central State Bank of Wichita* 202 Kan 450 (1969)."

The order sustaining the demurrer was implemented by an order of dismissal under the provisions of section 581, subdivision (3), of the Code of Civil Procedure. This appeal followed.

## Contentions

Plaintiff contends that the trial court erred in sustaining the demurrer because section 4302, subdivision (a), imposes liability upon a payor bank which fails to meet its midnight deadline with respect to a re-presented insufficient funds check.

Defendant contends, to the contrary, that section 4302, subdivision (a), has no application to a check which previously has been returned for lack of sufficient funds.

## Discussion

### Summary

There is no dispositive California decision on the issue presented by the parties' contentions in this case. There is a split of authority in other jurisdictions. The weight of such authority and the better rationale favors treating re-presented checks in the same fashion as checks presented for the first time. Therefore, plaintiff may have a cause of action and the order sustaining the demurrer was erroneous.

### There Is No Dispositive California Case

Section 4302 provides: "In the absence of a valid defense such as breach of a presentment warranty (subdivision (1) of Section 4207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of

"(a) A demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; or

"(b) Any other properly payable item unless within the time allowed for acceptance or payment of that item the bank either accepts or pays the item or returns it and accompanying documents."

The midnight deadline with respect to a bank is defined in section 4104 as "midnight on its next banking day following the banking day on which it receives the relevant item . . . ." In *Bank of America v. Security Pacific Nat. Bank* (1972) 23 Cal.App.3d 638, 643 [100 Cal.Rptr. 438], liability was asserted under section 4302 in respect of a check which had been returned for insufficient funds and was re-presented to the payor bank. A dismissal upon a demurrer being sustained was affirmed on the ground that any cause of action stated was barred by the three-year statute of limitations pertaining to actions "upon a liability created by statute." (Code Civ. Proc., § 338, subd. 1.)

Having noted the "importance of securing uniformity in the interpretation of the provisions of the Uniform Commercial Code among the various jurisdictions" (23 Cal.App.3d at p. 643), the court discussed the issue as to the applicability of section 4302 to a re-presentment of an insufficient funds check and said (*id.*, at pp. 643-644):

"Inasmuch as the sight drafts were returned upon the first presentment by the midnight deadline of the payor bank, no cause of action against the respondent arose under this section by virtue of the first presentment. The question arises whether the liability created under section 4302 is equally applicable to a second presentment of a draft previously returned to the holder. As will be recalled, each of the seven drafts here involved was re[-]presented on the day following its return to appellant. The respondent in each case delayed many days beyond its midnight deadline in returning the drafts to appellant after the re-presentment. We find it unnecessary to pass upon this question since, even if such liability did arise, it was a liability created by statute and the action would be barred by the three-year statute of limitations pertaining to such an action (Code Civ. Proc., § 338, subd. 1).

"However, we note in passing that at least one court has held that no liability is created under Commercial Code section 4302 by virtue of a delay in returning the item to the holder until after the midnight deadline after re-presentment (see *Leaderbrand v. Central State Bank of Wichita* (1969) 202 Kan. 450 [450 P.2d 1, 9].) The *Leaderbrand* case holds that the Uniform Commercial Code discloses a statutory scheme to require the payor bank to give timely notice of dishonor to the party

presenting the check just once and that such notice of dishonor fixes the time at which the item is dishonored by the payor bank and subsequent re-presentment does not require an additional notice of dishonor by the payor bank. The holding in that case is based primarily upon the provisions of Commercial Code section 4301, subdivision (3), providing that an item is dishonored when it is for the purpose of dishonor returned, and section 3511, subdivision (4), which in substance provides that when a draft has been dishonored a later presentment and notice of dishonor are excused."

Apparently *Leaderbrand* was the only case cited to the court. Still the court preferred to base its decision on the statute of limitations and expressly declined to pass upon the issue which we must now resolve. Under the circumstances, it is apparent that the California court was not overwhelmed by the logic of *Leaderbrand*. By adopting its ruling, the case could have been much more simply decided and the expressed goal of uniformity advanced. We examine the question, therefore, in the light of subsequently decided cases without any concern that reliance may have been placed upon indicated adherence to the *Leaderbrand* rule.

*There Is a Split of Authority in Other Jurisdictions*

Section 4302 is section 4-302 of the Uniform Commercial Code, and its applicability to the re-presentment of checks once returned for insufficient funds has been considered in several cases, most of which were decided after *Bank of America* v. *Security Pacific Nat. Bank, supra,* 23 Cal.App.3d 638.

As noted in *Bank of America, Leaderbrand* v. *Central State Bank of Wichita* (1969) 202 Kan. 450 [450 P.2d 1], affirmed a summary judgment for the defendant payor bank which failed to return a re-presented check within its midnight deadline. The court based its holding upon two propositions: (1) that section 3-511, subdivision (4) of the Uniform Commercial Code excused any notice of dishonor,[2] and (2) that the reason for the sanction of section 4302 is dissipated by the first dishonor of the check by nonpayment. With respect to the first ground, the *Leaderbrand* court said (450 P.2d at pp. 8-9): "While the language of [section] 84-3-511(4), supra—'Where a draft has been dishonored by nonaccep-

[2]Section 3511, subdivision (4) reads: "Where a draft has been dishonored by nonacceptance a later presentment for payment and any notice of dishonor and protest for nonpayment are excused unless in the meantime the instrument has been accepted.

tance'—does not refer to a dishonor by nonpayment, we think reference to the dishonor of a 'draft' 'by nonacceptance' would, *a fortiori*, include the dishonor of a check by nonpayment. Under K.S.A. 84-3-507(1) (a)[3] an instrument is dishonored when a presentment is duly made and due acceptance or payment is refused or cannot be obtained within the prescribed time or in case of bank collections the instrument is seasonably returned by the midnight deadline."

Concerning its second ground, the *Leaderbrand* court observed (450 P.2d at p. 9): "The sanction imposed by the provisions of section 84-4-302, supra, were designed to compel compliance with the statutory duties imposed upon the payor bank, but once these duties have been discharged by the payor bank the statutory scheme which emphasizes the importance of speed in the collection process, and the prompt settlement of such items because of the chain of credit dependent thereon has been fulfilled, and the reason for the sanction imposed dissipates. It was not the intention of the legislature to arbitrarily impose liability upon the payor bank under the facts and circumstances here confronting the court."

On these bases, the court concluded that (*ibid.*): "A study of the various sections of the Uniform Commercial Code adopted by Kansas as they relate to the facts in this case, and in particular sections 84-4-301(3), 84-3-511(4) and 84-1-203, supra, discloses a statutory scheme designed to impose a duty upon the payor bank, where a check is presented for payment and the drawer has insufficient funds on deposit to cover the item, to give timely notice of dishonor to the party presenting the check for payment just once. Such notice of dishonor *fixes the time at which the item is dishonored by the payor bank* as to the party presenting such item, and subsequent presentment of the item for collection, where the drawer still has insufficient funds on deposit to cover the item, does not require an additional notice of dishonor by the payor bank to such party. Under these circumstances any further notice of dishonor is excused." (Italics in original.)

*Leaderbrand* was cited and followed by the Court of Appeals of Oklahoma in *Goodman* v. *Norman Bank of Commerce* (Okla.App. 1976) 551 P.2d 661, in affirming a dismissal after a demurrer was sustained to a complaint against the payor bank which failed to return a re-presented check within its midnight deadline. The *Goodman* court

---

[3]Section 3507, subdivision (1)(a) contains the same provision.

did not add any reasons supporting the *Leaderbrand* rule which it simply adopted, stating (*id.*, at p. 663): "It is the conclusion of this court that once a check has been timely dishonored because of insufficient funds in the account on which it is drawn, a subsequent presentment for payment while the account remains insufficient, does not require an additional notice of dishonor by the payor bank."

The Kansas rule does not appear to have been adopted in any other jurisdiction besides Oklahoma. A conflicting line of authority appears to have started with the decision of the 5th Circuit in *Wiley* v. *Peoples Bank and Trust Co.* (5th Cir. 1971) 438 F.2d 513. Instruments held to be checks which have previously been presented and returned unpaid were determined not to be the basis of recovery under section 4302, subdivision (a) because each came within the express exception "other than a documentary draft." Remand was required, however, to permit an amendment to assert breach of the obligations pursuant to the collection letter accompanying the checks. The payor bank's argument that "§ 3-511(4) insulates it from liability as to the three items which had been previously presented and returned unpaid" (438 F.2d at p. 516) was rejected by the court, which said (*id.*, at pp. 516-517): "Literally read, the language of this section covers only drafts which have been dishonored by *non-acceptance.*

"The very nature of a check which is also a documentary draft contemplates no acceptance. The only decision to be made by the Payor Bank was the same decision it must make as to any demand item—to pay or refuse payment. However, the Kansas Supreme Court has applied § 3-511(4) to excuse compliance with the stricture of the midnight deadline in the case of dishonor by *non-payment.* The facts in Leaderbrand v. Central State Bank of Wichita, 202 Kan. 450, 450 P.2d 1 (1969), were that an ordinary check had twice been presented in person by the payee to the payor bank. Both times it was not paid because the maker lacked sufficient funds. On a third presentation through a depositary bank, the payor bank held the item several banking days before returning it unpaid. Reasoning that dishonor of a check by non-acceptance included dishonor of a check by non-payment, the court refused to hold the bank liable. We disagree with *Leaderbrand* and hold § 3-511(4) inapplicable here. Acceptance applies only to time items. It has nothing to do with demand items.[11]" (Italics in original.)

---

"[11]18 Kan.L.Rev. 697 [*sic*], n. 48 (1970)."

The Kansas Law Review article cited by the Fifth Circuit points out that the historical forerunners of section 3-511(4) "dealt only with fixing the liabilities of drawers and indorsers on time items" and that "[i]t was not designed for demand items, nor was it meant to be used in connection with any notice required of payor banks." (Note (1970) 18 Kan.L.Rev. 679, 683.)

The Supreme Court of Montana in *Sun River Cattle Co., Inc.* v. *Miners Bank of Mont. N.A.* (1974) 164 Mont. 237 [521 P.2d 679], reversed a judgment in favor of the payor bank which held re-presented checks beyond its midnight deadline. In so doing, it considered and rejected the payor bank's argument based upon *Leaderbrand's* holding as to the effect of section 3-511, subdivision (4). Referring to the re-presented checks, the *Sun River* court said (521 P.2d at p. 684): "The checks involved herein are demand items. Section 4-104(1)(g) and section 3-104(1) and (2)." The court then disposed of the bank's argument as follows (*id.*, at p. 687):

"Miners asserts several reasons why it is not liable under section 4-302. The first of these is that section 3-511(4) excuses notice of dishonor where a check has been presented to the bank and payment refused at least once before. Miners argues that the 'midnight deadline' rule does not apply and relies on Leaderbrand v. Central State Bank of Wichita, 202 Kan. 450, 450 P.2d 1. Section 3-511(4) provides:

"'Where a draft has been dishonored by nonacceptance a later presentment for payment and any notice of dishonor and protest for nonpayment are excused unless in the meantime the instrument has been accepted.'

"The Kansas court in *Leaderbrand* held that under section 3-511, once notice of dishonor had been given, an additional notice of dishonor was not required. In Wiley v. Peoples Bank and Trust Company, 5 Cir., 438 F.2d 513, the court rejected *Leaderbrand* and held section 3-511(4) inapplicable for the reason that 'acceptance applies only to time items. It has nothing to do with demand items.' Likewise, we hold that section 3-511(4) is inapplicable to the checks under consideration herein, for section 3-511(4) does not apply to demand items."

In *Blake* v. *Woodford Bank & Trust Co.* (Ky. App. 1977) 555 S.W.2d 589, the Court of Appeals of Kentucky reversed the trial court judgment in favor of the payor bank which failed to return within its midnight deadline a re-presented insufficient funds check. One basis of

the trial court's judgment was that "a payor bank was excused from giving any further notice of dishonor when a previously dishonored check was re-presented for payment . . . ." (*id.*, at p. 597), relying upon the decision in *Leaderbrand.* In rejecting this argument, the Kentucky court concluded that (*id.*, at p. 598) "the *Leaderbrand* decision is unsound and should not be followed in Kentucky," adopting the analysis in *Wiley, supra*, 438 F.2d 513, and *Sun River Cattle Co., supra*, 521 P.2d 679, with respect to the technical language of section 3-511, subdivision (4). However, the *Blake* court further found "more fundamental reasons" for rejecting *Leaderbrand.* It pointed out the requirement of section 4-301 for revocation of provisional credits that the item is required to be returned unless "unavailable" so that notice of dishonor does not suffice to revoke provisional settlements with respect to items which are available for return.

Finally, as an additional rationale for its decision, the *Blake* court said (555 S.W.2d at pp. 600-601):

"A practical reason also exists for rejecting the *Leaderbrand* decision. In 1972, approximately 25 billion checks passed through the bank collection process. The Federal Reserve Banks handled 8 billion checks that year. *Community Bank* v. *Federal Reserve Bank of San Francisco*, 500 F.2d 282, (9th Cir. 1974) *modified*, 525 F.2d 690 (9th Cir. 1975), *cert. denied* 419 U.S. 1089, 95 S.Ct. 680, 42 L.Ed.2d 681.[11] An earlier study indicated that only one half of one percent of all checks were dishonored when first presented for payment. Of those initially dishonored, approximately one half were paid upon re-presentment. F. Leary, Check Handling Under Article Four of the Uniform Commercial Code, 49 *Marq.L.Rev.* 331, 333, n. 7 (1965). A significant number of previously dishonored checks are paid upon re-presentment in the regular course of the check collection process. Such checks are often presented through intermediate collecting banks, such as the Federal Reserve Bank in this case. Each collecting bank will have made a provisional settlement with its transferor, and, in turn, received a provisional settlement from the bank to which it forwarded the check. In this way, a series of provisional settlements are made as the check proceeds through the bank collection process.

---

"[11]In this case, the United States Court of Appeals held that any bank, which utilized the check collection facilities of the Federal Reserve System by magnetic encoding its checks, becomes subject to Regulation J of the Board of Governors dealing with check collections. See also § 4-103(2) of the UCC (KRS 355.4-103(2)) and Comment 3 of the Official Code Comment. Although the parties have argued whether the bank has violated any of the provisions of Regulation J, this Court concludes that Regulation J imposed no additional duty on the bank relevant to *this* case." (Italics in original.)

"Under UCC § 4-213(2),[12] final payment of a check 'firms up' all of the provisional settlements made in the collection process. Under subsection (1)(d) of UCC § 4-213, a payor bank makes final payment of a check when it fails to revoke a provisional settlement 'in the time and manner permitted by statute, clearing house rule or agreement.' As to items not presented over the counter or by local clearing house, this means that a payor bank is deemed to have made final payment of a check when it fails to revoke a provisional settlement by its midnight deadline. See UCC § 4-213, Official Code Comment 6. In his article on check handling, Leary has described § 4-213 as the 'zinger' section: 'when provisional credit given by the payor bank becomes firm then—"zing"—all prior provisional credits are instantaneously made firm.' Leary, op.cit., at 361. If a payor bank was not required to meet its midnight deadline with respect to previously dishonored items, then none of the other banks involved in the collection process could safely assume that the check had been paid. Consider the problems of the depository bank. It must permit its customer to withdraw the amount of the credit given for the check when provisional settlements have become final by payment and the bank has had 'a reasonable time' to learn that the settlement is final. See UCC § 4-213(4)(a). The depository bank will rarely receive notice that an item has been paid. In actual practice, the depository bank will utilize availability schedules to compute when it should receive the check if it is to be returned unpaid. Leary, op.cit., at 345-346. If a payor bank is not bound by its midnight deadline as to previously dishonored items, then there is no way for the depository bank to know whether a previously dishonored item has been paid upon re-presentment except by direct communication with the payor bank. Such a procedure would impose an unnecessary burden upon the check collection process."

---

"[12]KRS 355.4-213 provides in part:

"'(1) An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first:

"' . . . . . . . . . . . . . . .

"'(d) made a provision [sic] settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule or agreement.

"'Upon a final payment under paragraphs (b), (c) or (d) the payor bank shall be accountable for the amount of the item.

"'(2) If provisional settlement for an item between the presenting and payor banks is made through a clearing house or by debits or credits in an account between them, then to the extent that provisional debits or credits for the item are entered in accounts between the presenting and payor banks or between the presenting and successive prior collecting banks seriatim, they become final upon final payment of the item by the payor bank.'"

The Court of Appeals of New York in *David Graubart, Inc.* v. *Bank Leumi Trust* (1979) 48 N.Y.2d 554 [423 N.Y.S.2d 899, 399 N.E.2d 930], directed entry of a summary judgment in favor of a defendant payor bank on one cause of action on the basis of uncontradicted facts showing the existence of a practice with respect to checks accompanied by an "advice to customer" slip that they could be held beyond the midnight deadline "if necessary, to enable funds from which to pay them to come into the account." (399 N.E.2d at p. 932.) The court also considered a question certified by the appellate division. In its response, the court first disposed of a defense by the bank based on *Leaderbrand*. It said in this respect (*id.*, at p. 933):

"Turning to the legal merits, we conclude first that Leumi's reliance on *Leaderbrand* v. *Central State Bank*, 202 Kan. 450, 450 P.2d 1, *supra*, which held that no notice of dishonor need be given as to an item previously returned for insufficient funds, is unavailing. The *Leaderbrand* court reasoned that subdivision (4) of section 3-511 of the code, in excusing further notice of dishonor with respect to 'drafts' once dishonored by 'nonacceptance', necessarily encompassed dishonor of 'checks' by 'nonpayment'. But, while a check is a kind of draft (Uniform Commercial Code, § 3-104, subd. [2], par.[b]), 'nonpayment' and 'nonacceptance' are distinctly different concepts, the latter referring specifically to a payor's refusal to certify that it will honor a *time* instrument when later presented for payment (Uniform Commercial Code, § 3-410, subd. 1; see *Wiley* v. *Peoples Bank & Trust Co.*, 438 F.2d 513, 516-517 (5th Cir.); Comment, 18 Kan.L.Rev. 679, 682-684, n. 48). Since it would be futile to present for payment a draft that has been dishonored by nonacceptance (when the obligation is conditioned on acceptance [see Uniform Commercial Code, § 3-501, subd. (1), par. (a)]), such presentment and further notice are excused as superfluous. In contrast, a *demand* item such as a check may eventually be paid if resubmitted at a time when the drawer's account has an adequate balance. This possibility makes it entirely reasonable to afford redeposited checks the full panoply of article 4 protections. (See, generally, Clark & Squillante, Law of Bank Deposits, Collections and Credit Cards [1970], pp. 71-72.)"

The most recent decision is *Bank Leumi Trust Co.* v. *Bank of Mid-Jersey* (D.N.J. 1980) 499 F.Supp. 1022. The district court awarded summary judgment to the plaintiff against the payor bank in its suit based upon the defendant's failure to meet its midnight deadline with respect to a re-presented insufficient funds check. In rejecting the

bank's defense based upon the previous dishonor, the court said (*id.*, at pp. 1025-1026):

"Mid-Jersey's second argument is based upon N.J.S.A. 12A:3-511(4). That section provides that 'Where a draft has been dishonored by non-acceptance a later presentment for payment and any notice of dishonor and protest for non-payment are excused unless in the meantime the instrument has been accepted.' Mid-Jersey argues that since check 1028 had been previously dishonored, this section permitted it to pass its midnight deadline when it dishonored the check for a second time. I will accept Mid-Jersey's argument that a check is a draft within the meaning of the Code, since the definition of a check contained in N.J.S.A. 12A:3-104 defines a check as 'a draft drawn on a bank payable on demand.' I also recognize that check 1028 was a previously dishonored draft. Nevertheless, Mid-Jersey's argument must be rejected because the check had been 'in the meantime . . . accepted' by Mid-Jersey when it passed its midnight deadline.

"The definition of 'acceptance' contained in N.J.S.A. 12A:3-410(1) envisions action on the part of the drawee, in this case Mid-Jersey. Although section 3-410 speaks specifically of a signature on a draft, I believe that in the case of a check its provisions must be read in harmony with Article 4, which provides detailed regulation of the handling of checks. There can be no doubt that Article 4 was intended to facilitate the tremendous number of checks that pass through commerce every day and to create a strict set of rules so that presenting and depository banks would know precisely when a check had been accepted or dishonored. In the words of Arthur Lawrence Abrams, the chair of the New Jersey Commission to Study and Report on the U.C.C., 'The check collection process is a mechanical operation and the rules should be similarly mechanical. Precision in detail is more important than general principles.' Introductory Commentary to Article 4, set out preceding N.J.S.A. 12A:4-101; *see also* U.C.C. Comment to 4-101, set out following N.J.S.A. 12A:4-101. In other words, certainty in the overall operation of commerce was determined to be a more important value than the fate of any particular check. Article 4 makes it clear that a check is accepted by a payor bank when it is held past its midnight deadline. N.J.S.A. 12A:4-302. This type of acceptance occurred in the present case subsequent to the previous dishonor and Mid-Jersey does not, therefore, have the section 3-511(4) defense available to it. In this regard, I am in full accord with the thoughts expressed by the Kentucky court in *Blake* v. *Woodford Bank & Trust Co.*, 555 S.W.2d 589,

21 U.C.C.Rep. 383, 396-400 (Ky.Ct. of App.1977): 'If a payor bank is not bound by its midnight deadline as to previously dishonored items, then there is no way for the depository bank to know whether a previously dishonored item has been paid upon representment except by direct communication with the payor bank. Such a procedure would impose an unnecessary burden upon the check collection process.' The plain fact is that in the modern world of check collection a clear cut, mechanical rule of check acceptance is necessary, and the common eventuality of previously dishonored checks being represented cannot be permitted to upset a system relied upon by banks all across the nation. Accordingly, Mid-Jersey's second argument must be rejected."

*Majority Rule Is Preferable*

The majority of the courts that have considered the question have concluded that re-presented insufficient funds checks, in the absence of specific contrary custom or agreement, are required to be dealt with by payor banks in the same fashion as checks presented for the first time. The rationale of the majority cases is persuasive and is supported by the implications of other provisions of the Uniform Commercial Code. The arguments advanced by defendants criticizing the majority rationale are not persuasive. We therefore conclude that the majority rule should be adopted as the California rule.

Though not discussed in the majority cases, section 4108 supports the majority rule. It provides in pertinent part: "(1) Unless otherwise instructed, a collecting bank in a good faith effort to secure payment may, in the case of specific items and with or without the approval of any person involved, waive, modify or extend time limits imposed or permitted by this code for a period not in excess of an additional banking day without discharge of secondary parties and without liability to its transferor or any prior party." The authority thus bestowed upon the collecting bank is withheld from payor banks by virtue of section 4105, subdivision (d) which defines collecting bank as "any bank handling the item for collection *except the payor bank.*" (Italics added.)

A classic example of a situation calling for "a good faith effort to secure payment" by extending the time limits imposed by section 4302 is a re-presentment of an insufficient funds check. Typically, such re-presentment reflects a hope if not an expectation that the drawer will deposit sufficient funds to cover the check. By providing that only a collecting bank can "modify or extend time limits imposed or permitted by

this code" (§ 4108) in such situations, section 4108 clearly recognizes that such time limits otherwise are in effect.

The majority cases' rationale for rejecting the *Leaderbrand* interpretation of section 3511, subdivision (4) is persuasive. If it were intended to excuse subsequent inaction as the result of dishonor by nonpayment, the section would not have specified dishonor "by nonacceptance," but would simply have excused later action in respect of drafts which were "dishonored."

Most persuasive in support of the majority view is the rationale expressed in *Blake, supra*, 555 S.W.2d 589, and *Bank Leumi, supra*, 399 N.E.2d 930, based upon the practicalities of the situation. As observed in *Blake*, the period allowed for the initial action (making a provisional settlement or returning the item) is so short that, for all practical purposes, a provisional settlement must be made by the payor bank. Thus, if re-presented checks are to be handled within the framework of modern clearinghouse practice, they will necessarily be the subject of provisional credits revocable only within the midnight deadline.[4] The statistics showing the widespread practice routinely to re-present insufficient funds checks, a substantial percentage of which are cleared on second presentment, indicate the desirability of giving like treatment to re-presented and initially presented checks, thereby enhancing the effectiveness of checks as a medium of exchange. Such treatment imposes no additional burden upon the payor bank. The existence or nonexistence of sufficient funds to cover re-presented checks must necessarily be ascertained to protect the depositor's interest if there are sufficient funds and to avoid liability under section 4302, subdivision (b) on a "properly payable item." The insufficiency of funds to cover such checks is no less readily ascertainable. If, on the other hand, the midnight deadline is not applicable, there is no time limit within which return is required. Such uncertainty would constitute a heavy and unnecessary burden on the check collection process.

Defendant's argument that the majority rule bestows a windfall upon the payee is not persuasive. There is a windfall but it is no greater or

---

[4]Section 4213 provides: "(1) An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first:

". . . . . . . . . . . .

"(d) Settled for the item having a right to revoke the settlement under any one or more of the following: statute, clearinghouse rule, agreement or reservation thereof, and failed to revoke the settlement in the time and manner permitted under such right."

different in quality than that which results when the bank fails to meet its midnight deadline with respect to an initially presented check. In both instances the payee has had a bad check which, by virtue of the bank's neglect, becomes payable by the bank.

Defendant also argues inapplicability of section 4302, subdivision (a) to a re-presented insufficient funds check on the ground that it is not a "demand item" since it is an "overdue instrument." Defendant cites section 3304, subdivision (3)(c) for the proposition that "[a]fter demand has been made the check is overdue," but cites no authority for the proposition that an overdue instrument "is no longer a demand item." *Sun River Cattle Co., Inc.* v. *Miners Bank of Mont., N.A., supra*, 521 P.2d at page 684, held to the contrary when it described the re-presented insufficient funds checks as follows: "The checks involved herein are demand items" and cited section 4-104, subdivision (1)(g) and section 3-104, subdivisions (1) and (2). Section 4104, subdivision (g) defines "item" to include "any instrument for the payment of money even though it is not negotiable .…" Thus, the withholding of bona fide purchasers' status to a purchaser of an overdue item by section 3302, subdivision (1)(c) does not affect its status as an "item" within section 4302, subdivision (a). Nor is the "time" and "demand" classification of instruments affected by their overdue condition. All instruments are classified either as "payable on demand" (§ 3108) or "payable at a definite time" (§ 3109). Either classification may be overdue. Thus, such status is irrelevant to their classification as "demand" or "time" instruments.

■ For the reasons above stated, we adopt the majority rule applying section 4302, subdivision (a) to re-presented insufficient funds checks. The complaint states facts giving rise to liability under that rule. Consequently, the demurrer was improperly sustained.

The judgment is reversed and the cause is remanded for further proceedings consistent with the views above expressed.

Klein, P. J., and Danielson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 22, 1982.