OPINION OF THE COURT
 

 Fuchsberg, J.
 

 On this appeal, here on a question certified by the Appellate Division pursuant to CPLR 5602 (subd [b], par 1), we are called upon to determine the role played by article 4 of the Uniform Commercial Code in fixing rights and obligations arising out of a second presentment of a check previously returned for insufficient funds. The heart issue is whether a payor bank is relieved of liability for retaining such an instrument beyond its "midnight deadline” (see Uniform Commercial Code, § 4-302) when it does so pursuant to an agreement concordant with a practice among banks for a payor to hold a previously dishonored item long enough to provide an opportunity for sufficient funds to be deposited by the drawer to meet the check.
 

 The operative facts are uncomplicated. Plaintiff David Grau
 
 *557
 
 bart, Inc. (payee), was issued a check for $13,000 drawn by the Prins Diamond Company on the latter’s account with the defendant Bank Leumi Trust Company (payor bank). Graubart then deposited the check in its own account with the National Bank of North America (depositary bank), which, pursuing normal collection channels, routed it to the payor bank via the New York Clearing House.
 
 [1]
 
 When the payor bank found that the Prins account had been overdrawn, it marked the item "insufficient funds” and promptly returned it to the depositary bank, again through clearing house channels. Notified of the dishonor, the payee redeposited the check with its bank, which this time apparently chose to forward it directly to Leumi on a collection basis, thus bypassing the clearing house (see Uniform Commercial Code, § 4-204, subd [2], par [a]). The item was accompanied by an "advice to customer” slip — a copy of which was also delivered to Graubart — indicating, as with collection items generally, that credit would only be given on payment. In addition, in a space bearing the printed legend "Special Instruction: (Return immediately if not paid unless otherwise instructed)”, the slip contained a typed direction that the payor bank was to "remit [its] cashiers’
 
 [sic]
 
 check when paid” (cf. Uniform Commercial Code, § 4-211, subd [1], par [b]). But when, after no more than seven banking days, the drawer’s account remained bare of funds to permit the check to clear, Leumi again returned the check to the depositary bank. Sometime during the course of these transactions the drawer made an assignment for the benefit of creditors.
 

 The gravamen of the fourth cause of action
 
 [2]
 
 in the suit the payee thereafter commenced against Leumi, as well as of its subsequent motion for summary judgment, was that the latter’s failure to return the resubmitted check to the depositary bank before its "midnight deadline” — defined as midnight of the next banking day following that on which the item was received (Uniform Commercial Code, § 4-104, subd [1], par [h]) —without more, rendered it liable to the payee for the face amount of the check under subdivision (a) of section 4-302 of
 
 *558
 
 the Uniform Commercial Code. This section, with seeming finality, provides, in pertinent part, that "if an item is presented on and received by a payor bank the bank is accountable
 
 [3]
 
 for the amount of * * * a demand item * * * if the bank * * * retains the item beyond midnight of the bank day of receipt without settling for it or * * * does not pay or return the item or send notice of dishonor until after its midnight deadline”.
 

 In opposition, and in support of its own cross motion, the payor bank submitted an affidavit by its assistant vice-president, who, after setting out his knowledge of banking practice, asserted that the "advice to customer” slip constituted a memorandum of an agreement requiring it to process the instrument in question in accordance with a common banking practice whereunder previously dishonored checks were to be held for such time as is reasonable under all the circumstances, even beyond the midnight deadline if necessary, to enable funds from which to pay them to come into the account. To this the payee’s only reply was in the form of counsel’s affirmation. Aside from a bald assertion, for which no foundation was supplied, challenging the existence of the custom, the affirmation merely interjected, for the first time, unsupported allegations of bad faith and collusion on Leumi’s part. Though it stated that the drawer was indebted to Leumi at the time of the assignment for the benefit of creditors, it made no showing of any unfair conduct on the part of the payor bank whatsoever.
 

 Special Term denied both motions, holding that triable issues existed, and the Appellate Division, over a vigorous dissent by Mr. Justice Joseph P. Sullivan, has since affirmed. In thereafter granting leave to appeal to this court, it posed the very broad question: "Was the order of the Supreme Court, as affirmed by this Court, properly made?” For the reasons that follow, we conclude a negative response is mandated.
 

 The payor bank’s assault on the conclusion of the courts below is grounded on the contention that there were no factual issues precluding summary judgment and that, on the undisputed facts, its actions were proper as a matter of law for two reasons: (1) on the authority of
 
 Leaderbrand v Central
 
 
 *559
 

 State Bank
 
 (202 Kan 450), it need not have given the payee notice of dishonor upon representment of the previously dishonored item, and (2) its conduct in varying the code’s midnight deadline pursuant to a valid agreement which accords with custom and usage in the banking community relieves it of the effect of the provisions of article 4 (citing,
 
 inter alia,
 
 Uniform Commercial Code, § 4-103).
 

 The preliminary dispute as to the existence of unresolved questions of fact need not detain us. The date of the contested transactions and the nonadherence to the midnight deadline, if applicable, were conceded for the purposes of the motion. The payor bank’s officer established the custom as to collection of previously dishonored checks, and the payee’s own submission of the "advice to customer” slip confirmed that the agreement had been made in contemplation of the custom. And, since Graubart’s counsel’s affirmation was made without personal knowledge of the facts, it was not competent to defeat the motion for summary judgment
 
 (Rotuba Extruders v Ceppos,
 
 46 NY2d 223, 229, n 4;
 
 Columbia Ribbon & Carbon Mfg. Co. v A-l-A Corp.,
 
 42 NY2d 496, 500; CPLR 3212, subd [b]; see, generally,
 
 Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,
 
 32 NY2d 285, 292-293). Leumi’s recitations therefore went undisputed.
 

 Turning to the legal merits, we conclude first that Leumi’s reliance on
 
 Leaderbrand v Central State Bank
 
 (202 Kan 450,
 
 supra),
 
 which held that no notice of dishonor need be given as to an item previously returned for insufficient funds, is unavailing. The
 
 Leaderbrand
 
 court reasoned that subdivision (4) of section 3-511 of the code, in excusing further notice of dishonor with respect to "drafts” once dishonored by "nonacceptance”, necessarily encompassed dishonor of "checks” by "nonpayment”. But, while a check is a kind of draft (Uniform Commercial Code, § 3-104, subd [2], par [b]), "nonpayment” and "nonacceptance” are distinctly different concepts, the latter referring specifically to a payor’s refusal to certify that it will honor a
 
 time
 
 instrument when later presented for payment (Uniform Commercial Code, § 3-410, subd 1; see
 
 Wiley v Peoples Bank & Trust Co.,
 
 438 F2d 513, 516-517; Comment, 18 Kan L Rev 679, 682-684, n 48). Since it would be futile to present for payment a draft that has been dishonored by nonacceptance (when the obligation is conditioned on acceptance [see Uniform Commercial Code, § 3-501, subd (1), par (a)]), such presentment and further notice are excused as
 
 *560
 
 superfluous. In contrast, a
 
 demand
 
 item such as a check may eventually be paid if resubmitted at a time when the drawer’s account has an adequate balance. This possibility makes it entirely reasonable to afford redeposited checks the full panoply of article 4 protections. (See, generally, Clark & Squillante, Law of Bank Deposits, Collections and Credit Cards [1970], pp 71-72.)
 

 Though its
 
 Leaderbrand
 
 point is, therefore, without merit, Leumi’s argument that its retention of the check beyond its midnight deadline was consonant with its agreement with the depositary bank is another matter. In this connection, initially we note that section 4-301 of the code,
 
 [4]
 
 which establishes the procedural rules enforced by section 4-302, nowhere suggests that the deadline does not apply to previously dishonored items. But, it is well recognized that the code’s requirements can be modified by agreement to conform them with commercial usage, in or out of banking circles, so that parties may advantage themselves of the "wisdom born of accumulated experience”
 
 (Bankers Trust Co. v Dowler & Co.,
 
 47 NY2d 128, 134).
 
 [5]
 
 Thus, section 4-103 provides in part:
 

 "(1) The effect of the provisions of this Article may be varied
 
 *561
 
 by agreement except that no agreement can disclaim a bank’s responsibility for its own lack of good faith or failure to exercise ordinary care * * *.
 

 * * *
 

 "(4) The specification or approval of certain procedures by this Article does not constitute disapproval of other procedures which may be reasonable under the circumstances”.
 

 The concept of an "agreement” under the code is, as with contract law generally, broad enough to permit the written terms of a memorandum to be supplemented and clarified by reference to customs and usages in the commercial milieu in which it is to be performed (e.g., Uniform Commercial Code, § 1-201, subd [5]; § 1-205; 3 Corbin, Contracts [1960 ed], § 556;
 
 Walls v Bailey,
 
 49 NY 464). But the bare fact that the payor bank acted in accordance with its agreement with the depositary bank does not, in and by itself, relieve the former of liability (Official Comment, McKinney’s Cons Laws of NY, Book
 
 62V2,
 
 part 2, Uniform Commercial Code, § 4-203, p 555). Section 4-103 demands that every party sought to be bound— here the payee — have assented to the agreement’s terms (Official Comment 2,
 
 op. tit.,
 
 Uniform Commercial Code, § 4-103, pp 519-520). However, we hold that here there was such consent.
 

 Under section 4-201 of the code, a payee’s presentment of an item to a depositary bank for collection creates a principal-agent relationship between the two, a status that persists until final settlement (see Official Comment 4,
 
 op. tit.,
 
 Uniform Commercial Code, § 4-201, pp 544-545). Graubart’s voluntary establishment of its bank’s authority constitutes an assent to the latter’s dealing with the check in the manner customary in the banking industry (see Restatement, Agency 2d, § 36).
 
 [6]
 
 To the extent that a payee deems itself aggrieved by a depositary bank’s ignoring of limitations on its authority, of which none are claimed here, the law provides recourse against it, but not against a third party who relies on the agent’s apparent authority (see
 
 Walsh v Hartford Fire Ins. Co.,
 
 73 NY 5;
 
 Wen Kroy Realty Co. v Public Nat. Bank & Trust Co.,
 
 260 NY 84).
 

 All this is not to say that any act by a depositary bank as an agent will relieve the payor bank of liability or that a
 
 *562
 
 payee may be deemed to have consented to any manner of agreement, no matter how unfair. Limitations remain. In addition to the duties of good faith and ordinary care, the requirement that the agreement be a reasonable one stands undiminished (see Uniform Commercial Code, § 4-103, subd [4]).
 

 As to good faith and ordinary care, neither of these is a serious obstacle in the circumstances of this case. The payee’s complaint alleges no bad faith or favoritism on the part of the payor bank, and the mere fact that the drawer was indebted to Leumi when it assigned for the benefit of creditors does not permit us to presume collusion in the absence of specific evidence. Moreover, beyond the superficial sense in which ordinary care is relevant to virtually every step in the collection process (see Uniform Commercial Code, § 4-202, subd [1]), this standard was not intended to prohibit banking procedures that themselves are reasonable and carried out with care (see Leary, Check Handling Under Article Four of the Uniform Commercial Code, 49 Marq L Rev 331, 342; see, also,
 
 Sunshine v Bankers Trust Co.,
 
 34 NY2d 404, 410; Uniform Commercial Code, § 4-213, subd [1]> pars [b], [d] [permitting time of "final payment” of an item to be set by agreement]). Indeed, subdivision (3) of section 4-103 goes a long way toward equating "general banking usage”, relied upon by Leumi here, with ordinary care.
 

 Further, in this case the reasonableness of the suspension of the midnight deadline is demonstrated by an examination of the underlying purpose of the rule. Far from merely encouraging banks to process deposited instruments promptly, the deadline plays the central role in "firming up” the provisional credit received by each transferor in the payee — depositary bank — intermediary bank
 
 [7]
 
 chain. Under section 4-213 of the code, provisional credits become final as soon as the payor bank settles for the item and the time for revocation under the midnight deadline passes. This point is particularly critical for banks that funnel hundreds or thousands of checks per day into the collection stream because it enables them to assume that payment has been effectuated after a certain period of time unless there is a prompt return. (See, generally,
 
 Blake v Woodford Bank & Trust Co.,
 
 555 SW2d 589, 600-601
 
 *563
 
 [Ky]; Official Comments 7-11,
 
 op. cit,
 
 Uniform Commercial Code, § 4-213, pp 591-593.)
 

 These concerns, however, are irrelevant to any evaluation of the custom followed under the agreement between the banks here. It creates no provisional credits that must be firmed up, and the payee can only collect when the payor bank remits its cashier’s check, thus signifying that the drawer’s account received sufficient funds to cover the check. By its nature, the procedure singles out the item as an exceptional one; no transferor will assume it has been paid until specific notice is received.
 

 Moreover, the concept of a midnight deadline is not compatible with any approach under which the payor bank seeks to wait for the deposit of funds in the drawer’s account. The reasonableness of such a banking custom must, therefore, be measured on its own terms. We conclude that this criterion is met when a depositary bank takes a possibly worthless instrument and directs the payor bank to adopt a technique that may provide the only chance for collection.
 
 [8]
 

 There is nothing unfair about this procedure. It is calculated to produce satisfied obligations in many instances where legal recourse, with all its attendant expense, inconvenience and uncertainty, would otherwise be necessary. Furthermore, the payee here cannot claim it was injured by its reliance on the payor bank’s silence after receipt of the item; the prior dishonor provided adequate warning of the questionable safety of the instrument. In any event, the payee’s right to sue the drawer on the underlying obligation was revived upon the first dishonor, and representment in no way cut short that prerogative (Uniform Commercial Code, § 3-802, subd [1], par [b]; § 4-301, subd [3];
 
 Blake v Woodford Bank & Trust Co., supra,
 
 pp 598-599).
 

 We therefore hold that the payor bank’s adherence to the depositary bank’s instructions for processing the drawer’s check does not render it liable to the payee under section 4-302. Accordingly, the certified question should be answered in the negative, the order of the Appellate Division reversed, and summary judgment granted in the defendant’s favor on the fourth cause of action.
 

 
 *564
 
 Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
 

 Order reversed, with costs, and summary judgment granted in favor of defendant dismissing the fourth cause of action. Question certified answered in the negative.
 

 [1]
 

 . A clearing house, of course, is a facility for transferring checks and other items to and from depositary banks and payor banks and for settling the balances due among them as a result of such transactions (see 8 Michie, Banks and Banking, ch 18, § 1, p 331, and n 1).
 

 [2]
 

 . The other causes of action in the payee’s complaint challenged the timeliness of the payor bank’s action in processing the check upon its initial deposit. These claims have been dismissed and are not before us on this appeal.
 

 [3]
 

 . (I.e., liable,
 
 Rock Is. Auction Sales v Empire Packing Co.,
 
 32 Ill 2d 269;
 
 Sun Riv. Cattle Co. v Miners Bank,
 
 164 Mont 237.)
 

 [4]
 

 . Section 4-301 of the Uniform Commercial Code reads in pertinent part:
 

 "(1) Where an authorized settlement for a demand item * * * has been made before midnight of the banking day of receipt the payor bank may revoke the settlement and recover any payment if before it has made final payment * * * and before its midnight deadline it
 

 "(a) returns the item; or
 

 "(b) sends written notice of dishonor or nonpayment if the item is held for protest or is otherwise unavailable for return.
 

 "(2) If a demand item is received by a payor bank for credit on its books it may return such item or send notice of dishonor and may revoke any credit given or recover the amount thereof withdrawn by its customer, if it acts within the time limit and in the manner specified in the preceding subsection.
 

 * * *
 

 "(4) An item is returned:
 

 "(a) as to an item received through a clearing house, when it is delivered to the presenting or last collecting bank or to the clearing house or is sent or delivered in accordance with its rules; or
 

 "(b) in all other cases, when it is sent or delivered to the bank’s customer or transferor or pursuant to his instructions.”
 

 [5]
 

 . As the Official Comments explain: "In view of the technical complexity of the field of bank collections, the enormous number of items handled by banks, the certainty that there will be variations from the normal in each day’s work in each bank, the certainty of changing conditions and the possibility of developing improved methods of collection to speed the process, it would be unwise to freeze present methods of operation by mandatory statutory rules” (Official Comment 1, McKinney’s Cons Laws of NY, Book 62 Vi, part 2, Uniform Commercial Code, § 4-103, p 519).
 

 [6]
 

 . The payee’s second presentment of the check for payment was with full knowledge that its previous rejection was for insufficiency of the drawer’s balance.
 

 [7]
 

 . In some collection transactions convenience dictates that checks pass through so-called "intermediary banks” in addition to or instead of a clearing house before being forwarded to the payor bank (see Uniform Commercial Code, § 4-105, subd [c]).
 

 [8]
 

 . Other than that the payor bank, permissibly, as we have demonstrated, did not feel bound by the deadline, the payee pointed to no facts indicating that the check was held for an unreasonable length of time.