183 N.J. Super. 525 (1982)
444 A.2d 627
PRESTIGE MOTORS, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
CARTERET BANK AND TRUST COMPANY, A BANKING INSTITUTION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division Bergen County.
Decided January 19, 1982.
*526 Michael E. Hubner for plaintiff (McKeon, Curtin, Hubner & McKeon, attorneys).
Barry A. Weisberg for defendant (Edward J. Dolan, attorney).
SCHIAFFO, J.S.C.
Plaintiff Prestige Motors, Inc., seeks, in a nonjury case, to recover from defendant Carteret Bank and Trust Company the sum of $16,516 for the bank's failure to pay or return a check tendered to it within the "midnight deadline," as provided in N.J.S.A. 12A:4-302.
The following facts are stipulated to by counsel:
Plaintiff is a corporation of the State of New Jersey, with principal offices at 405 Route 17, Paramus, Bergen County, New Jersey.
Defendant is a duly licensed banking institution of the State of New Jersey.
Ronald Collins was the principal of Goodwin Motors Corporation of Plainfield, New Jersey, which at all relevant times was an authorized Mercedes Benz dealership.
On March 24, 1978 Goodwin Motors Corporation purchased a 1977 Mercedes Benz Model 280 SE from plaintiff for $16,516.
Goodwin Motors Corporation then tendered its check No. 8780, dated March 24, 1978, to plaintiff for the sum of $16,516, drawn on defendant bank.
The Goodwin Motors Corporation check was then presented for payment through regular banking channels to defendant and was returned in a timely fashion unpaid as against uncollected funds on March 31, 1978.
On April 13, 1978, Joseph T. Dockery, Jr., plaintiff's president, personally delivered to defendant the following items: (a) the *527 disputed check of Goodwin Motors Corporation for the sum of $16,516; (b) a letter dated April 12, 1978, over Dockery's signature; (c) a certificate of protest and (d) a notice of protest.
On April 13, 1978 defendant acknowledged receipt of the check and gave a written receipt therefor. The aforesaid letter of Dockery, certificate and notice of protest were received by defendant on April 13, 1978.
Plaintiff gave no written instructions to defendant to hold the check for a specific period of time.
On April 28, 1978 defendant returned the check to plaintiff, unpaid due to insufficient funds.
Defendant denies liability, alleging that it owed no duty to plaintiff; that any damage suffered by plaintiff was the result of third parties over which defendant exercised no control and that it at all times acted in accordance with the Uniform Commercial Code, N.J.S.A. 12A:1-101 et seq.
The issue to be resolved is whether the "midnight deadline" requirements of N.J.S.A. 12A:4-302 apply to a check which has previously been dishonored and then presented a second time for payment to the bank on which it was drawn, thereby making the bank liable for the amount thereof.
N.J.S.A. 12A:4-302, "Payor Bank's Responsibility for Late Return of Item," provides that
In the absence of a valid defense such as breach of a presentment warranty (subsection (1) of 12A:4-207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of
(a) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; or
(b) any other properly payable item unless within the time allowed for acceptance or payment of that item the bank either accepts or pays the item or returns it and accompanying documents. (emphasis added)
*528 As in this case, the "demand item" mentioned above in subsection (a) in most cases is a check. See New Jersey Study Comment to N.J.S.A. 12A:4-302.
N.J.S.A. 12A:4-104(1)(h) provides:
"Midnight deadline" with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later. [Emphasis supplied]
There is a minority view and a majority view addressing the issue of whether the midnight deadline time limit is applicable to a second presentment of a demand item, check, for payment.
The minority view supports the proposition that the "midnight deadline" requirement applies only once to a particular demand item. In Leaderbrand v. Central State Bank of Wichita, 202 Kan. 450, 450 P.2d 1, 6 (Sup., 1969), an action was initiated by an alleged holder of a check to hold the payor bank accountable for the amount of the check. In entering judgment for defendant the court held:
It thus appears from the foregoing sections of the Uniform Commercial Code that the failure of the payor bank to give notice of dishonor before its "midnight deadline," asserted by the appellant to make the payor bank accountable for the amount of the check, was excused.
In reaching the above conclusion the court realized that the check in question was presented to defendant payor bank for collection, after having been twice orally dishonored by the bank. The court relied on K.S.A. 84-3-511(4), which provides as follows:
Where a draft has been dishonored, by non-acceptance a later presentment for payment and any notice of dishonor and protest for non-payment are excused unless in the meantime the instrument has been accepted.
Thus, the court interpreted the above U.C.C. section as imposing a duty on the payor bank to give notice to the party presenting the check for payment only once. There have been other cases supporting this minority view. See Goodman v. Norman Bank of Commerce, 551 P.2d 661, 19 U.C.C.Rep. 638 (Okla. App. 1976); Whalen & Sons Grain Co. v. Missouri Delta Bank, 496 F. Supp. 211, 29 U.C.C.Rep. 1174 (D.Mo. 1980).
*529 The majority position holds that the payor bank has the same obligations as to notice of dishonor and return of an item before its midnight deadline in the case of a check presented more than once for payment, as in the case of a check originally presented for payment. See Blake v. Woodford Bank & Trust Co., 555 S.W.2d 589, 21 U.C.C.Rep. 388 (Ky.App. 1977); Wiley, Tate & Irby v. Peoples Bank & Trust Co., 438 F.2d 513, 8 U.C.C.Rep. 887 (5 Cir.1971); Sun River Cattle Co. v. Miners Bank of Montana, 164 Mont. 237, 521 P.2d 679, 14 U.C.C.Rep. 1004 (Sup. 1974).
Although there are no New Jersey cases on point, the more favorable view is expressed in Bank Leumi Trust Co. of New York v. Bank of Mid-Jersey, 499 F. Supp. 1022 (D.C.N.J. 1980); aff'd 659 F.2d 1065 (U.S.Ct.App.3d Cir.1981). This court adopts that view. In Leumi the Judge Ackerman addressed similar issues to the ones under discussion. In Leumi an action was initiated by a presenting bank against a payor bank for losses arising from the latter's failure to pay or return or send notice of dishonor within the "midnight deadline" on a check drawn on insufficient funds  all in violation of N.J.S.A. 12A:4-302.
Defendant argued that since the check in question had been previously dishonored, N.J.S.A. 12A:3-511(4) permitted it to pass its midnight deadline when it dishonored the check for a second time. Judge Ackerman held:

N.J.S.A. 12A:4-302 clearly provides that, in the absence of a limited class of valid defenses, a payor bank that holds a check beyond its midnight deadline without either paying or returning it becomes strictly liable to the presenting bank for payment of the check in full. [Emphasis supplied]
He further stated in rejecting defendant's argument that
The check had been "in the meantime ... accepted" by Mid-Jersey when it passed its midnight deadline.
There can be no doubt that Article 4 was intended to facilitate the tremendous number of checks that pass through commerce every day and to create a strict set of rules so that presenting and depository banks would know precisely when a check had been accepted or dishonored.
Article 4 makes it clear that a check is accepted by a payor bank when it is held past its midnight deadline. [at 1026]
The court further explained that "this type of acceptance occurred in the present case subsequent to the previous dishonor *530 and Mid-Jersey does not, therefore, have the section 3-511(4) defense available to it." Judge Ackerman cites with approbation, Blake v. Woodford Bank & Trust Co., supra, where it was said:
The plain fact is that in the modern world of check collection a clear cut, mechanical rule of check acceptance is necessary, and the common eventuality of previously dishonored checks being represented cannot be permitted to upset a system relied upon by banks all across the nation....
[Id. at 1026]
Judge Ackerman went on to further state:
Article 4 of the U.C.C. provides clear cut rules for deciding who among the innocent parties must absorb the loss created.... It is not inequitable to enforce the provisions of the U.C.C. Indeed, it would be inequitable not to do so, because the smooth flow of commerce relies upon the application of the U.C.C.... [at 1027]
The check in this matter was received Thursday, April 13, 1978. Defendant's next banking day was Friday, April 14, 1978. The midnight deadline for handling the check expired at midnight, April 14, 1978. The check was not dishonored until after that date. Thus, defendant is deemed to have accepted it.
N.J.S.A. 12A:4-103, "Variation by Agreement ...," provides as follows:
The effect of the provisions of this Chapter may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not manifestly unreasonable.
I find that at the time the check was presented for payment the second time, or at any time prior or subsequent thereto, there was no agreement, oral, written or implied, between plaintiff and defendant authorizing defendant bank to keep the check beyond the midnight deadline requirement of the statute.
Also, I find that the provisions of N.J.S.A. 12A:4-302 apply to the check in this instance, thereby making the bank liable for the amount thereof.
Judgment for plaintiff in the sum of $16,516, the face value of the check, plus prejudgment interest.