HOUSTON CONTRACTING COMPANY, Plaintiff,

v.

CHASE MANHATTAN BANK, N. A. and Bank Tejarat, Defendants.

No. 80 Civ. 3441.

United States District Court, S. D. New York.

May 4, 1982.

---

Charles Cummings, Baker & McKenzie, New York City, for plaintiff.

Norman R. Nelson, James E. Clapp, Milbank, Tweed, Hadley & McCloy, New York City, for defendant Chase.

Greg A. Danilow, Kramer, Levin, Nessen, Kamin & Soll, New York City, for defendant Tejarat.

## MEMORANDUM DECISION

GAGLIARDI, District Judge.

Plaintiff Houston Contracting Company ("Houston") commenced this diversity action against The Chase Manhattan Bank, N. A. ("Chase") and Bank Tejarat, an Iranian entity and the successor-in-interest to the Iranians' Bank, to recover $300,000 in damages due to the failure by Chase on November 11, 1979 to comply with Iranians' Bank's telexed instructions to transfer $300,000 to Houston. Houston and Chase have cross-moved for summary judgment on the issue dispositive of this action, namely, whether Chase is liable to Houston under N.Y.U.C.C. ("UCC") § 4–302 (McKinney 1964 & Supp. 1981–1982).

### Facts

The material facts are not in dispute. During the period in question, Iranians' Bank maintained a demand deposit account with Chase in New York. Houston had no business relationship with Chase. In September 1979, Chase informed Iranians' Bank that it would not be permitted to overdraw its account with Chase in New York. On Sunday, November 11, 1979, Iranians' Bank transmitted a payment order to Chase by telex. The transmission was received electronically by Chase on November 11, 1979 and subsequently was printed out on a machine in Chase's New York office.

The printout reads in part: "PAY TO HOUSTON CONTRACTING COMPANY A/C NO. 00–0219–4 FIRST NATIONAL BANK OF HOUSTON TEXAS USA [DOLLARS] 300,000.00 . . ..." The payment order was not transmitted to Houston. The printout was never in the physical possession of either Houston or Iranians' Bank. November 12, 1979 was a bank holiday. On November 13, 1979, the balance in Iranians' Bank's account with Chase in New York was $12,835.98. The balance was unchanged at 8:10 a. m., New York time, November 14, 1979, when the account was frozen by Executive Order 12170. Chase did not pay $300,000 to First City National Bank of Houston for Houston's account pursuant to the telex from Iranians' Bank. Instead, Chase held over the transaction for insufficient funds in Iranians' Bank's account and finally cancelled the payment order on February 5, 1980. Chase did not communicate with either Houston or Iranians' Bank on either November 13 or November 14, 1979 concerning the payment order.

### Discussion

UCC § 4–302 states in pertinent part:

In the absence of a valid defense such as breach of a presentment warranty . . . , if an item is presented on and received by a payor bank the bank is accountable for the amount of (a) a demand item other than a documentary draft whether properly payable or not if the bank . . . does not pay or return the item or send notice of dishonor until after its midnight deadline. . . .

Houston claims that under § 4–302 Chase is liable to it for $300,000 due to Chase's failure either to pay pursuant to the telex or to provide notice of dishonor by the "midnight deadline" on November 14, 1979.[1] Chase disputes its accountability on the grounds that: (1) a telexed payment order is not a "demand item" subject to the requirements of § 4–302; (2) the telexed payment order was never "delivered"; and (3) the payment order was never "presented" as required by § 4–302.

---

1. The "midnight deadline" is defined in UCC § 4-104(1)(h) as midnight on the next banking day following the banking day on which the bank receives the relevant item.

The threshold inquiry is whether an unsigned telexed payment order is a "demand item" subject to the requirements of § 4–302.[2] A "demand item" is nowhere defined in the UCC, there is no pertinent legislative history, and the precise issue before the court appears to be one of first impression. In resolving the issue, the court shall be guided by prior judicial applications of § 4–302 and by consideration of the underlying purposes of the relevant statutory provisions.

Although no court has considered whether an unsigned, non-negotiable telexed payment order is a "demand item" subject to the requirements of § 4–302, there is significant support for the proposition that negotiability is a requisite element of a "demand item." *Farmers Co-op. Livestock Mkt. v. Second Nat. Bank*, 427 S.W.2d 247, 249 (Ky.1968); *see also Sun River Cattle Co. v. Miners Bank of Mont., N. A.*, 164 Mont. 237, 521 P.2d 679, 686–87 (1974). Indeed, of the many cases construing § 4–302, not one has applied § 4–302 to anything other than "checks" and "drafts," which are negotiable instruments satisfying the strict definitional requirements of UCC § 3–104. *See, e.g., Central Bank of Alabama, N. A. v. Peoples Nat. Bank*, 401 So.2d 14 (Ala.1981); *First Wyo. Bank, N. A. v. Cabinet Craft Distribs., Inc.*, 624 P.2d 227, 231 (Wyo.1981); *Idah-Best v. First Sec. Bank of Idaho*, 101 Idaho 402, 614 P.2d 425, 426 (1980); *David Graubart, Inc. v. Bank Leumi Trust Co.*, 48 N.Y.2d 554, 560–61, 423 N.Y.S.2d 899, 903, 399 N.E.2d 930, 933–34 (1979); *Engine Parts v. Citizens Bank of Clovis*, 92 N.M. 37,

582 P.2d 809 (1978); *Wilhelm Foods, Inc. v. National Bank of N. A.*, 382 F.Supp. 605 (S.D.N.Y.1974); *Leaderbrand v. Central State Bank of Wichita*, 202 Kan. 450, 450 P.2d 1, 6 (1969); *Rock Island Auction Sales, Inc. v. Empire Packing Co.*, 32 Ill.2d 269, 204 N.E.2d 721 (1965).[3] Moreover, no statutory policy favors the expansive interpretation of § 4–302 urged by Houston which would extend payor banks' obligations under that section beyond those obligations repeatedly recognized and enforced by courts. Payor banks have thus far been subjected to liability under § 4–302 for failure to provide timely notice of non-payment only with respect to negotiable instruments. To hold that an unsigned telex is the equivalent of a check or draft and to extend § 4–302 to the facts of this case would alter well-settled obligations, blur the well-defined distinctions developed under the UCC, and potentially disrupt the smooth, rapid functioning of commercial banking transactions which is a principal purpose underlying Article 4 of the UCC. *See David Graubart, Inc. v. Bank Leumi Trust*, 48 N.Y.2d 554, 558, 563, 423 N.Y.S.2d 899, 904, 399 N.E.2d 930, 935 (1979).

The court therefore holds that the telexed payment order at issue here is not a "demand item" and that Chase is not liable to Houston under § 4–302. The court need not consider the parties' other contentions. Houston's motion for summary judgment is denied; Chase's motion for summary judgment is granted.

SO ORDERED.

---

2. Recognizing that whether an electronic impulse may be an "item" is an unanswered question, *see* J. White and R. Summers, *Uniform Commercial Code* 646 (2d ed. 1980), the court shall assume for the purposes of this discussion that an unsigned telex is an "item" within the ambit of § 4·302. The soundness of a non-restrictive interpretation of "item" is suggested by the expansive language of the UCC itself. As very broadly defined in § 4-104(1)(g), the term "item" includes "any instrument for the payment of money even though it is not negotiable but does not include money." The Official Comment to § 4·104(1)(g) further defines the term as any "non-negotiable . . . paper calling for money."

3. Houston relies in vain on dictum in *Allied Color Corp. v. Manufacturers Hanover Trust*, 484 F.Supp. 881, 883–84 (S.D.N.Y.1980), that the class of demand items is larger than the class of items payable on demand. At issue in *Allied Color Corp.* was whether a postdated check, which is a "draft" within the meaning of § 3–104(2)(a), is a "demand item" subject to the requirements of § 4–302. The district court's holding that a postdated check is a "demand item" even though it is not payable on demand until at or after a future date is of no support to Houston's argument that an unsigned non-negotiable telex is a "demand item."