188 N.J. Super. 610 (1983)
458 A.2d 140
PRESTIGE MOTORS, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
CARTERET BANK & TRUST COMPANY, A BANKING INSTITUTION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 15, 1983.
Decided February 23, 1983.
*611 Before Judges BOTTER, POLOW and BRODY.
Barry A. Weisberg argued the cause for appellant (Edward J. Dolan, attorney; Barry A. Weisberg on the brief).
Michael E. Hubner argued the cause for respondent (McKeon, Curtin, Hubner & McKeon, attorneys; Andrew M. Wubbenhorst on the brief).
The opinion of the court was delivered by BOTTER, P.J.A.D.
Defendant appeals from a judgment entered in a nonjury trial in favor of plaintiff in the sum of $16,516, plus interest and costs. The damage award represents the amount of a check presented by plaintiff to defendant after it had been previously returned by defendant "not paid as against uncollected funds" in the account of defendant's customer who issued the check. In finding for plaintiff Judge Schiaffo, in the Law Division, adopted the majority view that applies the "midnight deadline" rule upon re-presentment of a check in the absence of a contrary agreement between the parties. See e.g., Bank Leumi Trust Co. v. Bank of Mid-Jersey, 499 F. Supp. 1022 (D.N.J. 1980), aff'd 659 F.2d 1065 (3 Cir.1981). We affirm substantially for the reasons *612 given by Judge Schiaffo in his published opinion. 183 N.J. Super. 525 (Law Div. 1982).
We reject defendant's sole contention on this appeal, that by the terms of N.J.S.A. 12A:3-511(4) the bank's prior dishonor of the check excuses it from giving notice of dishonor and protest for nonpayment absent an intervening acceptance. N.J.S.A. 12A:3-511(4) applies to a previous "dishonor by nonacceptance" of a draft, not dishonor by nonpayment of a demand instrument, and does not waive the midnight deadline rule of § 302 as to checks re-presented for payment in the absence of an appropriate agreement of the parties. One reason for this is set forth in David Graubart, Inc. v. Bank Leumi Trust Co., 48 N.Y.2d 554, 559-560, 399 N.E.2d 930, 933, 423 N.Y.S.2d 899, 902-903 (Ct.App. 1979), as follows:
... The Leaderbrand [Leaderbrand v. Central State Bank, 202 Kan. 450, 450 P.2d 1 (Sup.Ct. 1969)] court reasoned that subdivision (4) of section 3-511 of the code, in excusing further notice of dishonor with respect to "drafts" once dishonored by "nonacceptance", necessarily encompassed dishonor of "checks" by "nonpayment". But, while a check is a kind of draft (Uniform Commercial Code, § 3-104, subd. [2], par. [b]), "nonpayment" and "nonacceptance" are distinctly different concepts, the latter referring specifically to a payor's refusal to certify that it will honor a time instrument when later presented for payment (Uniform Commercial Code, § 3-410, subd. 1; see Wiley v. Peoples Bank & Trust Co., 438 F.2d 513, 516-517 (5th Cir.); Comment, 18 Kan.L.Rev. 679, 682-684, n. 48). Since it would be futile to present for payment a draft that has been dishonored by nonacceptance (when the obligation is conditioned on acceptance [see Uniform Commercial Code, § 3-501, subd. (1), par. (a)]), such presentment and further notice are excused as superfluous. In contrast, a demand item such as a check may eventually be paid if resubmitted at a time when the drawer's account has an adequate balance. This possibility makes it entirely reasonable to afford redeposited checks the full panoply of article 4 protections. (See, generally, Clark & Squillante, Law of Bank Deposits, Collections and Credit Cards [1970], pp. 71-72.)
The history of the rule and its application are thoroughly discussed in Blake v. Woodford Bank & Trust Co., 555 S.W.2d 589 (Ky. Ct. App. 1977). See also, Clark, The Law of Bank Deposits, Collections and Credit Cards (rev. ed. 1981), ¶ 3.4(2) at 3-23 to 3-24. In Blake the court gave a persuasive explanation for the majority rule:

*613 ... If a payor bank was not required to meet its midnight deadline with respect to previously dishonored items, then none of the other banks involved in the collection process could safely assume that the check had been paid. Consider the problems of the [depositary] bank. It must permit its customer to withdraw the amount of the credit given for the check when provisional settlements have become final by payment and the bank has had "a reasonable time" to learn that the settlement is final. See UCC § 4-213(4)(a). The [depositary] bank will rarely receive notice that an item has been paid. In actual practice, the [depositary] bank will utilize availability schedules to compute when it should receive the check if it is to be returned unpaid. [Citation omitted.] If a payor bank is not bound by its midnight deadline as to previously dishonored items, then there is no way for the [depositary] bank to know whether a previously dishonored item has been paid upon re-presentment except by direct communication with the payor bank. Such a procedure would impose an unnecessary burden upon the check collection process. [555 S.W.2d at 601]
We recognize that it may be in the holder's interest to have a drawee bank hold an item until sufficient funds arrive in the drawer's account to permit payment of the item ahead of other items that may thereafter be presented. As indicated in David Graubart, Inc., supra, 48 N.Y.2d at 563, 399 N.E.2d at 935, 423 N.Y.S.2d at 905, the re-presentment of a dishonored check may be accompanied by instructions that identify the item as "an exceptional one" calling for special treatment as to which a depositary bank by custom would not expect the midnight deadline to apply. But it is relatively simple for the drawee bank to comply with the midnight deadline rule unless contrary instructions have been received. The drawee bank can easily protect itself against liability by satisfying the midnight deadline rule. In the case at hand the trial judge found no justification for the bank's noncompliance. He found that "there was no agreement ... between plaintiff and defendant authorizing the bank to keep the check beyond the midnight deadline requirement of the statute." 183 N.J. Super. at 530. At oral argument appellant's attorney conceded that there is sufficient evidence in the record to support this finding; therefore, we accept it for the purposes of this appeal. Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974).
Affirmed.