**FINANCIAL UNIVERSAL CORPORATION,**
Appellant,

v.

**MERCANTILE NATIONAL BANK AT DALLAS, Appellee.**

No. 05–83–01509–CV.

Court of Appeals of Texas,
Dallas.

Dec. 18, 1984.

Rehearing Denied Jan. 22, 1985.

Joseph L. Rosenfield, Freeman L. Mittenthal, Dallas, for appellant.

Jeff Joyce, Winstead, McGuire, Sechrest & Minick, Dallas, for appellee.

Before AKIN, CARVER and ALLEN, JJ.

ALLEN, Justice.

Financial Universal Corporation (Financial) appeals from a summary judgment denying its claim against Mercantile National Bank at Dallas (Mercantile) for Mercantile's failure to pay a check presented to Mercantile. Financial argues, in three points of error, (1) that the trial court erred in rendering summary judgment because fact issues remained after the presentation of all the summary judgment evidence, (2) that the summary judgment was erroneous because, as a matter of law, the check was presented to Mercantile for payment on sight and was not presented for collection, and (3) that among the fact issues remaining were issues concerning Mercantile's negligence and conversion. We sustain Financial's first point of error and reverse and remand for a trial on the merits.

The controversy between the parties in this case arose after Charleston Corporation, one of Mercantile's customers, gave a check for $8,500.00 to Financial. Financial deposited the check in the National Bank of Georgia, which presented it to Mercantile. Mercantile found insufficient funds in Charleston's account to pay the check and timely returned it to the National Bank of Georgia. The National Bank of Georgia re-presented the check to Mercantile, along with a notice form. Mercantile received the check and notice form on October 22, 1981. One page of the notice form read in part:

PLEASE FIND ENCLOSED FOR COLLECTION

Deliver documents only on payment. Do not hold after dishonor, unless otherwise instructed. Remit in Atlanta or New York Exchange. If unpaid, give full reason.

Another page of the notice form appeared as follows:

| PAYER—WHERE PAYABLE—TYPE OF ITEM—SPECIAL INSTRUCTIONS | THEIR DATE OR NUMBER | DUE |
|---|---|---|
| Charleston Corporation Operating Account Please remit by Cashiers Check. Our customer has spoken to Mr. Collins in referance (sic) to these checks. | 10/1/81 | Sight |

Call Herb Waldman when checks are paid.

Again there were insufficient funds in Charleston's account to pay the check. Craig Collins, an employee of Mercantile, spoke on the telephone about the check to Violet White, an employee of the National Bank of Georgia. All agree he told her that Mercantile was dishonoring the check and returning it. Collins and White disagree on the date of the conversation. Collins says he spoke to White on October 22; White, in her affidavit, insists that they spoke sometime after November 19. An assistant vice-president of Mercantile stated in his affidavit that on October 22 Mercantile put the check in the mail "to be returned to the National Bank of Georgia." Mercantile admits on appeal that it mailed the check to a Fort Worth address instead of the Atlanta address of the National Bank of Georgia. Financial claims that the Fort Worth address is Charleston Corporation's address, but does not refer this court to summary judgment evidence which would establish this claim. Financial did produce summary judgment evidence, namely, Violet White's affidavit, indicating that the National Bank of Georgia had not received the check back from Mercantile during the month of October.

The basis for Financial's suit was that Mercantile had an obligation, under TEX. BUS. & COM.CODE 4.302 (Vernon 1968) (UCC), to give notice of dishonor of the re-presented check by its midnight deadline and that Mercantile was liable for the amount of the check since it failed to meet that obligation. Mercantile argues (1) that it had no obligation to give notice of dishon-

or by the midnight deadline since the check came to it on *re*-presentation, and (2) that the check was not payable on sight since the accompanying notice form read "Please Find Enclosed for Collection" and contained other notations conclusively showing that the check was re-presented for collection and not for payment.

■ If Mercantile's first argument is correct, it is entitled to judgment as a matter of law. We hold, however, that Mercantile was obliged to give notice of dishonor by the midnight deadline after the re-presentation of the check. In a majority of the jurisdictions which have applicable case law on this question, including the major commercial jurisdictions of New York and California, the courts have agreed that banks must treat re-presented checks in the same fashion as checks presented for the first time (in the absence of specific contrary custom or agreement). *Huntmix Inc. v. Bank of America National Trust & Savings Association,* 134 Cal.App.3d 347, 184 Cal.Rptr. 551 (1982); *Blake v. Woodford Bank & Trust Co.,* 555 S.W.2d 589, 597–601 (Ky.App.1977); *Wiley v. Peoples Bank & Trust Co.,* 438 F.2d 513, 515–17 (5th Cir.1971) (applying Mississippi law); *Sun River Cattle Co. v. Miners Bank of Montana N.A.,* 164 Mont. 237, 521 P.2d 679, 687 (1974); *Prestige Motors v. Carteret Bank & Trust Co.,* 183 N.J.Super. 525, 444 A.2d 627 (1982), *aff'd,* 188 N.J.Super. 610, 458 A.2d 140 (1983); *David Graubart, Inc. v. Bank Leumi Trust Corp.,* 48 N.Y.2d 554, 423 N.Y.S.2d 899, 399 N.E.2d 930, 933 (1979). The only contrary decisions we have found are from Oklahoma, Kansas, and Missouri. *Goodman v. Norman Bank of Commerce,* 551 P.2d 661 (Ct.App.Okla.1976); *Leaderbrand v. Central State Bank of Wichita,* 202 Kan. 450, 450 P.2d 1, 8–10 (1969); *Whalen & Sons Grain Co. v. Missouri Delta Bank,* 496 F.Supp. 211, 214 n. 2 (E.D.Mo.1980).

■ We perceive a number of reasons for adopting the majority rule that banks must observe the midnight deadline requirement when they receive re-presented checks in the absence of some contrary custom or agreement. First, *Leaderbrand,* the original and seminal case in the minority line of decisions, at least in part based its holding erroneously on UCC § 3–511(4), which states that dishonor of a draft by nonacceptance excuses later presentment *and* later notice of dishonor. *Leaderbrand,* 450 P.2d at 9; *see* TEX.BUS. & COM.CODE § 3.511(d) (Vernon 1968). However, UCC § 3–511(4) (3.511(d) in the Texas code) applies only to the time items. It does not apply to demand items. *Wiley,* 438 F.2d at 516–17; *accord: Huntmix,* 184 Cal.Rptr. at 554–55, *Blake,* 555 S.W.2d at 598; *Sun River Cattle Co.,* 521 P.2d at 687; *Prestige Motors,* 458 A.2d at 141–42; *Graubart,* 423 N.Y.S.2d at 902, 399 N.E.2d at 933.

■ Second, the Texas Uniform Commercial Code obliges us to strive to make the interpretation of the UCC as uniform as possible among the states. TEX.BUS. & COM.CODE § 1.102(b)(3) (Vernon 1968); *see, First National Bank in Grand Prairie v. Lone Star Life Insurance Co.,* 524 S.W.2d 525, 528 (Tex.Civ.App.—Dallas 1975), *writ ref'd n.r.e. per curiam,* 529 S.W.2d 67 (Tex.1975); *also, Morton v. Texas Welding & Manufacturing Co.,* 408 F.Supp. 7, 10–11 (S.D.Tex.1976). This obligation provides persuasive reason for adopting the majority rule.

Finally, and most important, there is a practical reason for adopting the majority rule. The Kentucky Court of Appeals stated this reason well in *Blake,* 555 S.W.2d at 601:

> If a payor bank was not required to meet its midnight deadline with respect to previously dishonored items, then none of the other banks in the collection process could safely assume that the check had been paid.... If a payor bank is not bound by its midnight deadline as to previously dishonored items, then there is no way for a depository bank to know whether a previously dishonored item had been paid upon re-presentment except by direct communication with the payor bank. Such a procedure would

impose an unnecessary burden on the check collection process.

For these reasons, we adopt the majority rule and hold that unless there was some contrary custom or agreement making the re-presented check in question a time item rather than a demand item, Mercantile was obliged to give notice of dishonor by its midnight deadline.

■ Mercantile contends, however, that it is entitled to summary judgment even if the midnight deadline rule applies to re-presented checks. First, Mercantile argues that it did give notice of dishonor when it put the dishonored check in the mail "to be returned to the National Bank of Georgia" within twenty-four hours of its receipt. The summary judgment evidence is uncontroverted, showing that Mercantile mailed the check addressed to the National Bank of Georgia, but directed to a Fort Worth, Texas address. The evidence shows further that the National Bank of Georgia had no branch office in Fort Worth, Texas. Hence, the summary judgment evidence shows that Mercantile mailed the check to the wrong address. UCC 3–508(3), TEX. BUS. & COM.CODE § 3.508(c) (Vernon 1968), provides that "[n]otice [of dishonor] may be given in any reasonable manner." It is, of course, not reasonable to send the notice to the wrong address. The summary judgment evidence does not establish that Mercantile gave notice of dishonor by mailing the dishonored check back to the National Bank of Georgia.

■ Mercantile also argues that the check was not a demand item payable on sight, since the notice form attached to it read "Please Find Enclosed For Collection." The words "for collection" on a document accompanying a check may indeed indicate that the check is not a demand item payable on sight. *Western Air & Refrigeration, Inc. v. Metro Bank of Dallas*, 599 F.2d 83, 84–90 (5th Cir.1979) (applying Texas law). However, the phrase "for collection" is not an incantation which magically fixes the nature of an item, no matter what else may be written on the instrument or an accompanying doc-

ument. In *New Ulm State Bank v. Brown*, 558 S.W.2d 20, 24 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ), the drafts bore the words "WE ENCLOSE FOR COLLECTION AND RETURN OR CREDIT WHEN PAID." The Court of Civil Appeals nonetheless found that each draft was a demand item, payable "at sight," and "due and actionable upon presentation." *Id.*

■ Mercantile, though, also points to the fact that one page of the notice form contained the instructions "remit by cashier's check" and "[c]all Herb Waldman when checks are paid." Mercantile notes that *Graubart* seems to hold that an instruction to remit by cashier's check is a sign of an agreement that the check in question would not be payable on sight. *See, Graubart*, 423 N.Y.S.2d 901 & 905, 399 N.E.2d at 932 & 936. Although such an instruction might be one sign that the item is not payable on sight, other notations on the notice form here indicate that the check in this case was a demand item. In particular, one page of the notice form indicates explicitly that the check was due on sight, and a notation immediately underneath the words "for collection" on another page expressly instructs the bank *not* to hold after dishonor. These notations are so unequivocally clear that, in the absence of some custom or agreement extrinsic to the notice form, they would conclusively establish that the check was a demand item, despite the words "for collection" and the instructions to remit by cashier's check and notify a designated person upon payment. *Cf., New Ulm State Bank*, 558 S.W.2d at 24.

Thus, if the summary judgment evidence had conclusively showed that the check and the notice form constituted the entire agreement between Mercantile, the National Bank of Georgia, and Financial concerning the re-presentation of the check and that there was no custom under which Mercantile could hold the check for collection, we could and would conclude from the face of the check and the notice form that the check was, as a matter of law, a demand

item. The summary judgment evidence, though, does not conclusively negate the possibility that Financial and Mercantile operated under some custom or had some oral or written agreement, not reflected in the notice form, allowing Mercantile to hold the check after the midnight deadline.

■ We conclude that a fact issue remains on whether there was any custom or agreement apart from the notice form under which Mercantile was to hold the check for collection. There is also a fact issue on whether Craig Collins, an agent of Mercantile, gave oral notice of dishonor to Violet White of the National Bank of Georgia by the midnight deadline.[1] Consequently, neither party is entitled to summary judgment. TEX.R.CIV.P. 166–A(c); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970) (summary judgment evidence must show absence of material fact issues as a matter of law for movant to be entitled to summary judgment). Consequently, we reverse and remand the cause to the trial court for further proceedings consistent with this opinion.

---

1. UCC 3–508(3), TEX.BUS. & COM.CODE § 3.508(c), provides that oral notice of dishonor may be sufficient to comply with the midnight deadline rule. *Greer v. White Oak State Bank*, 673 S.W.2d 326, 328 (Tex.App.—Texarkana 1984, no writ).