**Philip PAPADOPOULOS and United General Tourist S.A., Plaintiffs,**

**v.**

**CHASE MANHATTAN BANK, N.A., Bankers Trust Company, Genozentralbank Stuttgart – Genossenschaftliche Zentralbank AG, Volksbank Zuffenhausen EG, and National Westminster Bank, Plc, Defendants.**

**No. 89 Civ. 4461 (WK).**

United States District Court, S.D. New York.

July 12, 1990.

Gerald M. Levine, Gallet Dreyer & Berkey, New York City, for plaintiff. Marianne P. Sender, Kent T. Stauffer, Chase Manhattan Bank, N.A., Litigation Div., New York City, for Chase Manhattan.

Nicholas Z. Hegedus, Kieffer & Hahn, New York City, for National Westminster Bank.

Wendy L. Adiss, Coudert Bros., New York City, for Genozentral Bank Stuttgart, Genossenschaftliche Zentralbank, A.G. Volksbank, Zuffenhauser, E.G., N.Y.C.

David M. Satnick, Moses & Singer, New York City, for Bankers Trust, N.Y.C.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

This action arises out of the dishonor of a draft made payable to plaintiff Philip Papadopoulos. Defendant National Westminster Bank, PLC ("NatWest") moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(1) for want of subject matter jurisdiction. Defendant Chase Manhattan Bank, N.A. ("Chase") moves for summary judgment on plaintiff's claims against it. For reasons which follow, we grant the motions and dismiss the action.

## BACKGROUND

The pertinent facts are not in dispute. In December of 1987, the National Bank of Greece agreed to sell to plaintiff [1] a cruise ship, the M/V Castallea, for $7.5 million, but required that plaintiff provide by January 15, 1988 a bank guarantee in the amount of $750,000. At the time, plaintiff had approximately $600,000 available in his account at NatWest's Athens branch. To obtain the balance necessary for the guarantee, plaintiff instructed Seeadler Seetpirostol GmbH ("Seeadler"), a travel company with which plaintiff had an ongoing business relationship, and its subsidiary, Weaver Maritime Inc. ("Weaver"), to forward $150,000 owed to him personally. A representative of Seeadler and Weaver remitted the sum to Volksbank Zuffenhausen EG ("Volksbank"), a bank located in Stuttgart, Germany, and instructed Volksbank to issue a draft payable to plaintiff. In compliance with this instruction, Volksbank, with appropriate authorization, issued a draft drawn on the New York account at Chase of Genozentralbank Stuttgart–Genossenschafliche Zentralbank AG ("GZB"), another Stuttgart–based bank. The draft was personally delivered to plaintiff, who, on December 21, 1987, deposited the draft in his account at NatWest's Athens branch.

NatWest then sent the draft to Bankers Trust Company ("Bankers Trust"), which on December 23 presented it to Chase for payment. On the following day, Chase—pursuant to an agreement with its customer, GZB—dishonored the draft and promptly returned it to Bankers Trust. The agreement, which had been entered into in 1985 to protect against payment of fraudulent drafts, required that Chase dishonor and return upon presentment any draft in excess of $25,000 for which it had not first received a telex from GZB authorizing it to make that specific payment. Chase had received no such pre-presentment authorization, and, on December 28, sent to GZB a telex explaining why the draft had been returned unpaid.

Thereafter, several telexes were sent among the defendant banks. On December 29, Bankers Trust sent a telex to NatWest erroneously stating that the draft had been returned unpaid for insufficient funds. On January 4, NatWest sent "top urgent" telexes to Bankers Trust and Chase asking that the two banks investigate. On the same day, GZB authorized Chase to pay the draft, which, of course, Chase no longer had.

On January 15, the date by which plaintiff was required to provide the guarantee, NatWest–Athens mailed the draft back to plaintiff. The draft never was re-presented to Chase for payment and plaintiff lost his option to purchase the ship.

In 1989, plaintiff commenced this action against Volksbank, GZB, NatWest, Bankers Trust [2] and Chase, seeking to recover $6 million for economic injury allegedly suffered as a result of the nonpayment of the draft. Both Chase and NatWest asserted cross-claims for contribution and indemnification against each other as well as against the other defendant banks. Volksbank and GZB then moved to dismiss

---

1. Plaintiff Papadopoulos, whose principal place of business is in Athens, is the president and major shareholder of United General Tourist S.A. ("UGT"), a Liechtenstein corporation, which also has been named as a plaintiff in this action. UGT had no active role in the events giving rise to this litigation. For ease of reference, we will refer only to Papadopoulos as "plaintiff".

2. By Stipulation and Order dated September 29, 1989, plaintiff voluntarily discontinued his claims against Bankers Trust.

for, *inter alia*, lack of personal jurisdiction and *forum non conveniens*. Their motion has been held in abeyance pending resolution of the subject matter jurisdiction issues raised by the motions we now decide.

## DISCUSSION

■ Plaintiff concedes that 12 U.S.C. § 632 provides the only possible basis for our assertion of jurisdiction over this action. In substance, the relevant provision of § 632 provides federal district courts with jurisdiction over actions (1) which arise out of transactions involving international or foreign banking, and (2) to which a corporation organized under the laws of the United States is a party.[3] Plaintiff contends that § 632 jurisdiction exists because the action arises out of an international banking transaction, and because Chase, a federally-chartered national banking association, is a defendant potentially liable to him.[4] Defendant NatWest contends that plaintiff's claims against Chase are without legal basis, and that Chase is therefore a party in name only. Consequently, NatWest asserts, § 632 jurisdiction does not lie.

■ Thus, the existence of subject matter jurisdiction turns on the viability of plaintiff's claims against Chase, which, of course, is also the focus of Chase's motion for summary judgment. Plaintiff concedes that Articles 3 and 4 of the Uniform Commercial Code[5] afford him as payee no cause of action against Chase, the payor bank.[6] Plaintiff relies instead on "window" provisions of the Code, which in substance provide that the absence of a Code remedy does not foreclose recovery at common law.[7]

Plaintiff, however, recognizes that he cannot defeat Chase's summary judgment motion merely by demonstrating that the Uniform Commercial Code does not preempt his claims against Chase. He therefore cites *Palsgraf v. Long Island R.R. Co.* (1928) 248 N.Y. 339, 162 N.E. 99, *Strauss v. Belle Realty Co.* (1985) 65 N.Y.2d 399, 492 N.Y.S.2d 555, 482 N.E.2d 34, *White v. Guarente* (1977) 43 N.Y.2d 356, 401 N.Y.S.2d 474, 372 N.E.2d 315, *Cullen v. BMW of North America, Inc.* (E.D.N.Y.1982) 531 F.Supp. 555, *rev'd,* (2d Cir.1982) 691 F.2d 1097, *cert. denied,* (1983) 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948, and *David Graubart, Inc. v. Bank Leumi Trust Company* (1979) 48 N.Y.2d 554, 423 N.Y.S.2d 899, 399 N.E.2d 930 from which he asks us to infer that Chase had some common law obligation to him. None of the cases supports such an inference.

3. In pertinent part, 12 U.S.C. § 632 provides: Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking ... or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches ... shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits.

4. The parties agree that, under the reasoning of *Corporacion Venezolana de Fomento v. Vintero Sales Corp.* (2d Cir.1980) 629 F.2d 786, *cert. denied,* (1981) 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804, jurisdiction under § 632 will lie only if Chase has potential liability to the plaintiff.

5. Articles 3 and 4 of the Uniform Commercial Code, which are entitled "Commercial Paper" and "Bank Deposits and Collections," respective-

ly, together define and regulate banking relationships in the commercial paper context.

6. Under the Code, a payor bank is not liable to a payee on a negotiable instrument until it has accepted the instrument. § 3–409(1) It is undisputed that Chase never accepted the draft and, accordingly, may not be held liable under § 3–409 for payment of it. Nor may plaintiff, who is not a customer of Chase, avail himself of § 4–402. Under that section, a payor bank is liable to its customer for the consequences of a wrongful dishonor.

7. Specifically, plaintiff cites § 1–103, which provides generally that the principles of law and equity, unless displaced by the Code, supplement its provisions; and § 3–409, which, although it absolves a drawee who has not accepted an instrument of liability on that instrument, provides that "[n]othing in this section shall affect any liability in contract, tort or otherwise arising from any letter of credit or other obligation or representation which is not an acceptance."

*Palsgraf v. Long Island R.R. Co.* (1928) 248 N.Y. 339, 162 N.E. 99 was a suit by a passenger against a railroad. Assuming the existence of an obligation of due care, the court was concerned only with the question whether the particular accident was foreseeable.

In *Strauss v. Belle Realty Co.* (1985) 65 N.Y.2d 399, 492 N.Y.S.2d 555, 482 N.E.2d 34, the court concluded that Con Edison, despite its negligent failure to provide electricity as required by its agreement with the owner of an apartment building, was not answerable to a tenant who had sustained injuries in a common area of the building during a blackout.

*White v. Guarente* (1977) 43 N.Y.2d 356, 401 N.Y.S.2d 474, 372 N.E.2d 315 involved a professional malpractice claim against an accounting firm that had been retained by a limited partnership to perform auditing and tax return services required by the partnership agreement. The court concluded that, on the facts before it, the firm could be held liable to one of the limited partners who was "one of a settled and particularized class among the members of which the [financial] report would be circulated for the specific purpose of fulfilling the limited partnership agreed upon arrangement." *Id.* at 363, 401 N.Y.S.2d at 478, 372 N.E.2d at 320.

As to *Cullen v. BMW of North America, Inc.* (E.D.N.Y.1982) 531 F.Supp. 555, *rev'd*, (2d Cir.1982) 691 F.2d 1097, *cert. denied*, (1983) 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948, the plaintiff referred us only to the opinion of the district court which was subsequently reversed by the Second Circuit.

Finally, *David Graubart, Inc. v. Bank Leumi Trust Company* (1979) 48 N.Y.2d 554, 423 N.Y.S.2d 899, 399 N.E.2d 930 involved a payor bank's liability for retaining, at the payee's request, a redeposited check beyond the midnight deadline imposed by § 4–302 of the Uniform Commercial Code. In deciding that, on the particular facts before it, the payee's request absolved the bank of statutory liability, the court had no occasion to consider whether or not common law liability existed outside the Code.

In brief, in none of the cases cited was the court called upon to decide or even to consider whether a payor bank could be held liable to a payee at common law for returning a draft unpaid pursuant to its agreement with its customer. We accordingly grant Chase's motion for summary judgment. Since this decision renders 12 U.S.C. § 632 an inadequate basis for our assertion of jurisdiction, we grant NatWest's motion to dismiss the complaint for lack of subject matter jurisdiction.

## CONCLUSION

Defendant Chase Manhattan Bank, N.A.'s motion for summary judgment is granted. National Westminster Bank's motion to dismiss the complaint for want of subject matter jurisdiction is granted.

SO ORDERED.