[No. B035208. Second Dist., Div. Five. Mar. 12, 1990.]

LINCOLN NATIONAL BANK, Plaintiff, Cross-defendant and Respondent, v.
DAVID DWORSKY et al., Defendants, Cross-complainants and Appellants;
WELLS FARGO BANK, Defendant, Cross-defendant and Respondent.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

## COUNSEL

Bayne & Markle and John M. Bayne, Jr., for Defendants, Cross-complainants and Appellants.

McCambridge, Deixler, Marmaro & Goldberg, Bert Deixler, Shinaan S. Krakowsky and Donna F. Grandy for Plaintiff, Cross-defendant and Respondent.

Barton, Klubman & Oetting and Robert Louis Fisher for Defendant, Cross-defendant and Respondent.

## OPINION

**ASHBY, Acting P. J.**—This is an action on a promissory note. Appellants David Dworsky and Fred Nigro borrowed money from respondent Lincoln National Bank. Appellants defaulted after attempting to pay off the loan with a check drawn on an account at respondent Wells Fargo Bank, which dishonored the check because the account had insufficient funds. When Lincoln sued appellants on the promissory note, appellants claimed Wells Fargo had not properly complied with requirements in the California Uniform Commercial Code for dishonoring the check, and that as a result Wells Fargo was liable for the amount of the check and appellants' debt should be deemed extinguished.

In a nonjury trial the court found that Wells Fargo complied with the Commercial Code. The court entered judgment in favor of Lincoln on the promissory note and in favor of Wells Fargo on Lincoln's complaint and appellants' cross-complaint.

In part I of this opinion we uphold the trial court's determination that Wells Fargo complied with California Uniform Commercial Code section 4301 (the equivalent of Uniform Commercial Code § 4-301) in giving notice of dishonor because the original check was "otherwise unavailable for return." In part II (not for publication) we uphold the trial court's award of attorney's fees to Lincoln based on the promissory note. We affirm the judgment and remand for the trial court to award additional attorney's fees for this appeal.

## I

### UNAVAILABILITY OF THE CHECK

■ Appellants borrowed $45,000 from Lincoln. When the final payment of principal plus interest was due ($40,169.86), appellants gave Lincoln a check in this amount. The check was from a company called Agretech, and was payable to Pacific Seeds, appellants' partnership. The check was drawn on Agretech's account at Wells Fargo Bank. This check was dishonored by Wells Fargo because there were insufficient funds in the Agretech account. Sufficient funds were never subsequently deposited to the Agretech account, which was closed several months later. The check was never paid, nor did appellants make any other payments on the promissory note.

Appellants nevertheless contend that Wells Fargo is accountable for the amount of the check. The controlling issue is very narrow and involves

whether Wells Fargo complied with section 4301 of the California Uniform Commercial Code when Wells Fargo gave notice of dishonor of the check.

Under the code, Wells Fargo had a strict deadline for dishonoring the check, which was midnight of the next business day following Wells Fargo's receipt of the check. (Cal. U. Com. Code, §§ 4104, subd. (h), 4301, 4302; see, e.g., *Nautilus Leasing Services, Inc.* v. *Crocker National Bank* (1983) 147 Cal.App.3d 1023, 1031 [195 Cal.Rptr. 478]; Annot. (1983) 22 A.L.R.4th 10.)

Section 4301, subdivision (1) authorized Wells Fargo to dishonor the check before the midnight deadline by (a) returning the check *or* (b) sending written notice of dishonor if the check was "otherwise unavailable for return."[1]

The check was received by Wells Fargo on Friday, November 29, 1985. The midnight deadline was midnight of the next business day, Monday, December 2. As the midnight deadline approached, the responsible Wells Fargo employees searched for but could not find the check. The check appeared lost or destroyed.[2] Therefore, before the midnight deadline, Wells Fargo reported the item lost and sent a timely notice of dishonor, along

---

[1] California Uniform Commercial Code section 4301 was adopted without change from Uniform Commercial Code section 4-301. Section 4301, subdivision (1) provides: "Where an authorized settlement for a demand item (other than a documentary draft) received by a payor bank otherwise than for immediate payment over the counter has been made before midnight of the banking day of receipt the payor bank may revoke the settlement and recover any payment if before it has made final payment (subdivision (1) of Section 4213) and before its midnight deadline it [¶] *(a) Returns the item; or* [¶] *(b) Sends written notice of dishonor or nonpayment if the item is held for protest or is otherwise unavailable for return.* " (Italics added.)

[2] A 20-year veteran of Wells Fargo operations, Sandra Hillery was assistant vice-president and manager of the statement preparation department in San Francisco. She testified that due to its large amount, this check was required to go through signature verification, a process separate from the determination whether sufficient funds were in the account. The check was sent to Northern California for signature verification. This check would have been sent to San Francisco the night of Friday, November 29 and examined on Monday, December 2. On December 2 the Northern California office received word from the Southern California office to pull the check out and return it for uncollected funds. When Hillery and her staff looked for the check, however, they were unable to find it.

According to Hillery the check was probably lost or destroyed in the electronic sorting process. Checks go through electronic sorting machines several times even in normal transactions. This check had previously been presented and dishonored by return of the check. Thus, when it was presented again on November 29, the check had been through the entire process once before. In her experience a check which repeats this process multiple times tends to become frayed. When a frayed check goes through the electronic sorter the machine can jam and destroy the check or cause the check to fall to the floor or stick to another check.

with a photocopy of the check to Union Bank, who operated as correspondent bank for Lincoln in this matter.[3]

At trial appellants contested Wells Fargo's showing that the check was lost or destroyed. Appellants contended that actually the original check was returned to Agretech in one of Agretech's regular monthly statements.[4] Wells Fargo did not concede that this occurred, but presented evidence to show that even if the check was subsequently returned to Wells Fargo's own customer, the check could not be found in time to meet the midnight deadline and was therefore "unavailable for return" for purposes of section 4301.[5]

The trial court found that the check was unavailable for return within the meaning of section 4301 because Wells Fargo could not find the check in time to meet the midnight deadline, even if the check was subsequently returned to Agretech. We agree.[6]

Wells Fargo was required to act by the midnight deadline in order to avoid liability for the check. The purpose of this rule is to enable the other banks affected by the item to rely with certainty that, after the midnight deadline has passed, the item will be paid. (*Huntmix, Inc.* v. *Bank of*

---

[3] Union Bank's supervisor of the adjustment and returned items departments, Frank Bentley, testified that Wells Fargo gave timely notice of dishonor, before the midnight deadline. Wells Fargo used a standard clearinghouse form, reporting the original was lost while being returned for uncollected funds. In other words, Wells Fargo timely complied with the customary clearinghouse procedures for giving notice of dishonor when an original is lost. In Mr. Bentley's experience about two of every one thousand checks are lost and this customary form is received about once every three days.

[4] Appellant Dworsky testified that in March or April of 1986, several months after the dishonor, Dworsky was shown the original of the check by Barry Klein, an officer of Agretech who signed the check. Appellants infer that the original was returned to Agretech in a monthly statement.

[5] Wells Fargo's witness Hillery testified that at the end of a monthly statement cycle, two million checks must be electronically sorted by account number to include them with the customers' monthly statements. This process takes several days. Before they go through this process, these two million checks are in no order and it is very difficult to find a particular check while this process is in operation. In this case the check was re-presented to Wells Fargo on November 29, which was also the last day of the monthly statement period on the Agretech account. Hillery and her staff looked diligently for the check on December 2, but were unable to find it before the midnight deadline. Thus, it was possible that the check could ultimately be included in the customer's monthly statement but also be unavailable at the time of the midnight deadline.

[6] Appellants also vaguely suggest that the apparent return of the check to its maker instead of to appellants violated a duty toward appellants. We do not consider this issue because it has not been briefed, nor was it the theory of the case at trial. The only issue is whether Wells Fargo complied with the midnight deadline. Whether the check was misdirected or subsequently found does not affect whether it was unavailable for return at the time of the midnight deadline.

*America* (1982) 134 Cal.App.3d 347, 358-360 [184 Cal.Rptr. 551].) Wells Fargo fulfilled this purpose by giving timely notice of dishonor.

There is no merit to appellants' argument that Wells Fargo was required to prove the check was permanently lost or destroyed. The drafters of section 4301 provided for the notice of dishonor method in very broadly defined circumstances, when the item itself is "otherwise unavailable for return." Nothing in this broad language precludes the possibility that an item is unavailable for return at the time the bank must act to meet its midnight deadline, even though the item subsequently becomes available.

"Available" means "immediately utilizable" (Webster's New Internat. Dict. (3d ed. 1981) p. 150) or "that can be got, had, or reached; handy; accessible." (Webster's New World Dict. (3d college ed. 1988) p. 94.) The check was unavailable within these meanings at the time for meeting the midnight deadline. As the midnight deadline approached, Wells Fargo's employees could not find the check; it could not be "had" or "reached." Since the check was not at that time "handy" or "immediately utilizable" for return, Wells Fargo met the midnight deadline by giving notice of dishonor instead.

There is very little authority construing the "otherwise unavailable for return" language of Uniform Commercial Code section 4-301 and none supports appellants' argument. Appellants misplace their reliance on *Blake* v. *Woodford Bank & Trust Co.* (Ky.App. 1977) 555 S.W.2d 589 and *Sun River Cattle Co., Inc.* v. *Miners Bank of Mont. N.A.* (1974) 164 Mont. 237 [521 P.2d 679]. In those cases the bank failed to return the item *or* give notice of dishonor by the midnight deadline. The issue in those cases was whether the bank's *failure* to comply with Uniform Commercial Code section 4-103 would be *excused* under section 4-108, which incorporates a reasonable diligence standard.[7] (*Blake* v. *Woodford Bank & Trust Co., supra*, 555 S.W.2d at pp. 591, 593; *Sun River Cattle Co., Inc.* v. *Miners Bank of Mont. N.A., supra*, 521 P.2d at pp. 684, 685.) Here Wells Fargo is not seeking to be excused from a failure to meet the midnight deadline; Wells Fargo met the midnight deadline. *United States* v. *Loskocinski* (E.D.N.Y. 1975) 403 F.Supp. 75, cited by appellants, arose in such an unusual context that it provides little guidance. The issue in *Loskocinski* was whether a criminal grand jury subpena served on a bank should be

---

[7] Adopted without change from Uniform Commercial Code section 4-108, California Uniform Commercial Code section 4108, subdivision (2) provides: "Delay by a collecting bank or payor bank beyond time limits prescribed or permitted by this code or by instructions is excused if caused by interruption of communication facilities, suspension of payments by another bank, war, emergency conditions or other circumstances beyond the control of the bank provided it exercises such diligence as the circumstances require."

quashed. The court quashed the subpena because it was unwilling to speculate whether the civil courts would eventually determine that the subpena rendered the originals unavailable for return to other banks. Other cases cited in an annotation touching upon this subject are also distinguishable. (Annot., *supra*, 22 A.L.R.4th at pp. 38-40.) In *Berman* v. *United States Nat. Bank* (1976) 197 Neb. 268 [249 N.W.2d 187, 194], the bank failed to return the item *or* give notice of dishonor before the deadline. In *Northwestern Nat. Ins.* v. *Midland Nat. Bank* (1980) 96 Wis.2d 155] [292 N.W.2d 591, 594, 597], the bank made no contention that the check was unavailable for return; the check simply was not returned in a timely manner. In *Colorado Nat. Bank* v. *First Nat. Bank* (W.D.Mich. 1978) 459 F.Supp. 1366, 1369-1370 and *Yeiser* v. *Bank of Adamsville* (Tenn. 1981) 614 S.W.2d 338, 339, 343, the bank *did* return the item by the midnight deadline and the issue was whether the bank was *additionally* required to send a "wire advice" in accordance with a Federal Reserve requirement.

We conclude that appellants' attempt to impose liability on Wells Fargo for failing to return the original check before the midnight deadline is utterly without merit.

## II

### ATTORNEY'S FEES *

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment is affirmed and the cause remanded with direction to the trial court to determine Lincoln National Bank's reasonable attorney's fees for services performed on this appeal and to add such fees to the principal amount of the judgment. Costs on appeal are awarded to respondents.

Boren, J., and Turner, J., concurred.

---

* See footnote, *ante,* page 852.